**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AARON MURPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> v.<br><br>ARGO BLOCKCHAIN PLC, PETER WALL, ALEX APPLETON, MATTHEW SHAW, SARAH GOW, COLLEEN SULLIVAN, and MARIA PERRELLA,<br><br>      Defendants. | Case No. 1:23-cv-00572-NRM-SJB<br><br>Date of Service: March 27, 2023 |

**RICHARD HAWES'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................. 2

ARGUMENT ........................................................................................................................ 6

I.     MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE
CLASS ....................................................................................................................... 6

        A.    The PSLRA Standard For Appointing Lead Plaintiff................................................. 6

        B.    Under the PSLRA, Movant Should be Appointed Lead Plaintiff.............................. 7

                1.    Movant Filed a Timely Motion.................................................................. 7

                2.    Movant Has the Largest Financial Interest in the Relief Sought by the
Class ...................................................................................................... 8

                3.    Movant Meets Rule 23's Typicality and Adequacy Requirements ............ 9

II.    MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
SHOULD BE APPROVED ......................................................................................... 11

CONCLUSION................................................................................................................... 15

i

**TABLE OF AUTHORITIES**

**Cases**                                                             **Page(s)**

*Baughman v. Pall Corp.*,
250 F.R.D. 121 (E.D.N.Y. 2008) ................................................................................7, 8

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................9, 11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ....................................................................................6

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) .............................................................................7, 8, 9

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ..............................8, 10

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011).....................10, 11

*Levine v. AtriCure, Inc.*,
508 F. Supp. 2d 268 (S.D.N.Y. 2007)...............................................................................7

*In re Millennial Media, Inc. Sec. Litig.*,
87 F. Supp. 3d 563 (S.D.N.Y. 2015)................................................................................7

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................8

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................................10

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010).........................9

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ...................................10

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)...............................................................................11

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)..............................................................................8, 9

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................7

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) .........................................................................................12

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................ *passim*

Fed. R. Civ. P. 23(a)(4)..................................................................................................10

**Other Authorities**

Anne Cullen,
    More Judges Are Demanding Diversity Among Class Counsel,
    Law360 (July 16, 2020) ...........................................................................................14

Ralph Chapoco,
    Calls for Lawyer Diversity Spread to Complex Class Litigation,
    Bloomberg Law (July 30, 2020) ..............................................................................14

Richard Hawes ("Movant") respectfully submits this memorandum of law pursuant to § 27(a)(2) of the Securities Act of 1933 ("Securities Act"), § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of his motion for the entry of an order: (1) appointing Movant as Lead Plaintiff to the above-captioned action (the "Action"); and (2) approving Movant's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[1]

## PRELIMINARY STATEMENT

The Action presently pending before this Court is brought on behalf of those who purchased or otherwise acquired Argo Blockchain plc ("Argo" or the "Company," together with Peter Wall, Alex Appleton, Matthew Shaw, Sarah Gow, Colleen Sullivan, and Maria Perrella, the "Defendants") American Depository Shares ("ADSs") pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about September 23, 2021 (the "IPO" or "Offering"); and/or Argo securities between September 23, 2021 and October 10, 2022, inclusive (the "Class Period"), which seeks to recover damages caused by Defendants' violations of Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies

---

[1]      Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. filed herewith.

Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $631,886.17, Movant, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Movant also satisfies Rule 23's typicality and adequacy requirements. Movant's claims are typical of the Class's claims because he suffered losses on his Argo investment as a result of Defendants' false and misleading statements. Further, Movant has no conflict with the Class and will adequately protect the Class's interests given his significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel. Accordingly, Movant is the presumptive Lead Plaintiffs.

Lastly, if appointed Lead Plaintiff, Movant is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movant's motion should be granted in its entirety.

### FACTUAL BACKGROUND

Argo is organized under the laws of England and Wales with principal executive offices located at 9th Floor, 16 Great Queen Street, London WC2B 5DG, England. ¶ 21.[2] The Company's ADSs and 8.75% Senior Notes due 2026 trade on the NASDAQ under the ticker symbols "ARBK" and "ARBKL," respectively. *Id*. Argo, together with its subsidiaries, purports

---

[2]    All citations to "¶ __" are from the Class Action Complaint.  ECF No. 1.

to engage in the cryptocurrency mining business worldwide. ¶ 35. Argo maintains a fleet of thousands of Bitcoin or Bitcoin equivalents (together "BTC") mining machines located in the Company's Baie Comeau and Mirabel facilities in Canada, as well as its Helios facility located in Dickens County, Texas. ¶ 36.

On August 19, 2021, Argo filed a registration statement on Form F-1 with the SEC in connection with its IPO, which, after several amendments was declared effective by the SEC on September 22, 2021 (the "Registration Statement"). ¶ 37. On September 23, 2021, Argo filed its prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents"). ¶ 38. The same day, and pursuant to the Offering Documents, Argo conducted its IPO, issuing 7.5 million ADSs at a price of $15 per ADS, for approximate proceeds of $105 million before expenses and after applicable underwriting discounts and commissions. ¶ 39.

The Offering Document represented that the Company's mining strategy purportedly involved "cost-effectively acquir[ing] the latest generation mining machines and install[ing] them in North American facilities that utilize predominantly … inexpensive power[.]" ¶ 40. The Offering Documents also stressed to investors the sustainability of the Company's operations through the use of the Company's "Smart Growth" strategy. ¶ 42. The Offering Documents further represented that the Company had acquired 160 acres in Western Texas for the development of a mining facility known as the Helios Facility. ¶ 44. The Offering Documents represented that the Helios Facility had access to up to 800 MW of power and that the Helios Facility was expected to support 100 MW of power capacity. *Id*. The Offering Documents assured investors that the Company's "investments in mining facilities [were] designed to

significantly expand [its] mining capacity and provide [it] with meaningful control over [its] mining operations." ¶ 45.

On September 30, 2021, the Company issued a press release announcing that it had expanded the mining capacity of its future Helios Facility through a purchase agreement for cryptocurrency mining machines that was partially funded by the Company's cash reserves. ¶ 49. On November 1, 2021, the Company issued a press release announcing its third quarter 2021 financial results and reassuring investors about the continued sustainable growth of the Company's BTC mining operations. ¶ 50.

On April 27, 2022, the Company issued a press release announcing its full year 2021 financial results. ¶ 52. The press release stated that it had acquired the Helios project in Dickens County, Texas and stated that the Company had "[e]xpanded Bitcoin mining capacity from 0.6 Exahash per second ('EH/s') to 1.6 EH/s," indicating that the Company had significantly strengthened its mining operations. *Id.* On May 2, 2022, the Company filed its annual report on Form 20-F with the SEC reporting the Company's financial and operational results for the quarter and year ended December 31, 2022. ¶ 55. The annual report continued to assure investors that the Company was focused on cost-effectively acquiring and deploying advanced mining technology in North American facilities that used predominantly inexpensive power. *Id.* The annual report also made positive statements regarding the historical sustainability of the Company's operations, and the attractiveness of its purported "appreciating" investments in BTC. ¶ 58. On May 5, 2022, the Company issued a press release announcing the "[e]nergization" and official opening of the Helios Facility. ¶ 60.

The complaint alleges that the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to

4

make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation and also alleges that defendants knowingly and/or recklessly made false and/or misleading statements and/or failed to disclose that: (1) Argo was highly susceptible to and/or suffered from significant capital constraints, electricity and other costs, and network difficulties; (2) the foregoing issues hampered, *inter alia*, Argo's ability to mine BTC, execute its business strategy, meet its obligations, and operate its Helios Facility; (3) as a result, Argo's business was less sustainable than Defendants had led investors to believe; (4) accordingly, Argo's business and financial prospects were overstated; and (5) as result, the Company's Offering Documents and public statements were materially false and misleading. ¶¶ 47, 67.

The truth was revealed on October 7, 2022, when Argo issued a press release "announc[ing] several strategic actions that are intended to bring in additional capital to the business and ensure that the Company has the working capital necessary to execute its current strategy and meets its obligations over the next twelve months." ¶ 68. The Company stated that in addition to measures being taken to reduce costs and preserve capital, the Company had signed a non-binding letter of intent with an affiliate of New York Digital Investment Group ("NYDIG") to amend an existing equipment financing agreement, plans to sell 3,400 mining machines, and intends to raise approximately £24 million via a proposed subscription with a strategic investor. *Id*. Following these disclosures, Argo's ADS price fell 23.26%. ¶ 72.

Then, on October 11, 2022, the Company issued a press release providing an operational update stating that the amount of BTC mined during September decreased from the amount mined in August 2022, driven by a 12% increase in network difficulty during September. ¶ 73. The press release also disclosed that the Company was continuing to curtail its operations at the

Helios Facility during periods of high electricity prices. *Id*. On this news, Argo's ADS price fell 10.98%. ¶ 74.

Through the Action, Movant seeks to recover for himself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

### I.      MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

#### A.      The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

**B.     Under the PSLRA, Movant Should be Appointed Lead Plaintiff**

As discussed below, Movant should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Movant holds the largest financial interest of any movant, and Movant otherwise satisfies Rule 23's typicality and adequacy requirements.

**1.     Movant Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Aaron Murphy published notice of the lead plaintiff deadline via *Globe Newswire* on January 26, 2023. *See* Ex. A; *see also In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 567 (S.D.N.Y. 2015) (finding publication in Globe Newswire sufficient to satisfy the PSLRA's notice requirement).  Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before March 27, 2023. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Movant's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movant timely signed and submitted the requisite certification, identifying all of his relevant Blockchain trades during the Class Period, and detailing Movant's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met**.**

### 2. Movant Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig*., No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Movant purchased 52,225 net and 178,425 total Argo ADSs[3], expended $ 102,139.68 in net funds and suffered LIFO losses of $631,886.17 from his ADSs attributable to the fraud. *See* Ex. C. Movant is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.      Movant Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss*, 252 F.R.D. at 191 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

---

[3]      The calculation of these two factors takes into account Movant's sales of Argo common stock during the Class Period. According to the Prospectus filed by Argo on September 23, 2021, "[e]ach ADS represents the right to receive ten ordinary shares and may be evidenced by American Depository Receipts, or ADRs." *See* Argo Blockchain plc, Prospectus (Form 424B4) i (Sept. 23, 2021).  Net and total shares were calculated by converting the common stock sold into the corresponding number of ADSs.

Movant's claims are clearly typical of the Class's claims.  Movant purchased Argo securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Argo and certain of its officers and directors under the federal securities laws. Because the factual and legal bases of Movant's claims are similar to those of the Class's claims, Movant necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in his certification, *see* Ex. B, Movant's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean*

*Marine Petroleum Network, Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same).  Contemporaneously with the filing of the instant motion, Movant has submitted a Declaration with additional information about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. Movant has been investing in the stock market for over thirty years. Further, Movant has significant business experience as a founder, former President and current Managing Director of a chain of retail stores for nearly twenty years. Ex. C.

Movant has also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class.  As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See* Ex. D.  Consequently, Movant is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Movant respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II.    MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movant has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. D; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi

11

& Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Rudani v. Ideanomics, Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re: Revolution Lighting Technologies, Inc. Securities Litigation*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5

12

million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D. Nev.) (where, as sole lead counsel for the class, the firm obtained final approval of $712,500 settlement); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where the Faruqi Firm, as sole lead counsel for the class, obtained preliminary approval of $5,000,000 settlement); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.)

13

(appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[4] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[5] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

---

[4]     *See* Ex. E (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business) (renewal pending).

[5]     *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of the Faruqi Firm as Lead Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: March 27, 2023                    Respectfully submitted,

                                         **FARUQI & FARUQI, LLP**

                                         By:    */s/ James M. Wilson, Jr.*
                                                James M. Wilson, Jr.

                                         James M. Wilson, Jr.
                                         Robert W. Killorin (*pro hac vice*
                                         forthcoming)
                                         **FARUQI & FARUQI, LLP**
                                         685 Third Avenue, 26th Floor
                                         New York, NY 10017
                                         Telephone: 212-983-9330
                                         Facsimile: 212-983-9331
                                         Email:  jwilson@faruqilaw.com
                                                 rkillorin@faruqilaw.com

                                         *Attorneys for [Proposed] Lead Plaintiff*
                                         *Richard Hawes and [Proposed] Lead*
                                         *Counsel for the putative Class*

15