**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AARON MURPHY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARGO BLOCKCHAIN PLC, PETER WALL, ALEX APPLETON, MATTHEW SHAW, SARAH GOW, COLLEEN SULLIVAN, and MARIA PERRELLA, <br><br> Defendants. | Case No.: 1:23-cv-00572-NRM-SJB <br><br> Hon. Nina R. Morrison |

**THE ARGO INVESTOR GROUP'S MEMORANDUM OF LAW IN REPLY TO**
**THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

## I.    PRELIMINARY BACKGROUND

Only three motions for lead plaintiff remain: (1) Benjamin Lamontagne, Ever Garcia, and Michael Phillips (collectively, the "Argo Investor Group"), (2) Richard Hawes; and (3) Alex Lacy. The Argo Investor Group possesses the largest financial interest in the relief sought by the Class and otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. The Argo Investor Group, therefore, is the presumptive lead plaintiff pursuant to the PSLRA and applicable case law.

Collectively, the Argo Investor Group purchased 31,644 shares of Argo during the Class Period, retained 14,554 through the end of the Class Period, expended $241,101.64, and **demonstrated** to the Court that it sustained an estimated loss of $226,759.01. The Argo Investor Group substantiated its financial interest in the litigation by submitting a loss analysis chart specifying its transactions in Argo stock by providing the date, amounts, cost, and proceeds for each trade. *See* ECF No. 17-2 (loss analysis chart). Moreover, each member of the Argo Investor Group is ideally suited to serve as the lead plaintiff given their diverse professional backgrounds and broad coverage of class claims. *See* ECF No. 17-4 (Argo Investor Group Joint Declaration). The Argo Investor Group consists of Mr. Lamontagne, a corrections sergeant, Mr. Garcia, a senior business development analyst, and Mr. Phillips, a field service specialist, all of whom are deeply committed to acting in the best interest of the Class, obtaining the largest recovery possible, and providing effective representation. *Id*.

While Hawes claims to have a greater loss, he refuses to substantiate that claim by providing a loss analysis demonstrating his financial interest in the lawsuit. Each movant for lead plaintiff provided this information, except Hawes. Hawes' refusal in this regard strikes against standard practice and custom in this area of the law and suggests heavily that he is inadequate to

serve as a lead plaintiff in a securities class action lawsuit of this magnitude. This is especially problematic here in light of the fact that Hawes sold 434,100 shares during the first eight days of the Class Period without providing any information as to the cost basis for these shares, whether they resulted in a profit, or how the $709,440.00 in proceeds he received from the sale impacted his supposed financial interest under the *Lax* factors. Since Hawes has failed to demonstrate his "financial interest" in the action, he cannot claim to have a greater loss than the Argo Investor Group or otherwise establish that he should be appointed as the lead plaintiff. His motion is deficient and should be denied.

Meanwhile, movant Lacy claims a loss of $143,584.93, more than $83,000 *less* than the Argo Investor Group's loss, and therefore cannot claim to possess the "largest financial interest" in the case. Recognizing that he does not possess a larger financial interest than the Argo Investor Group, Lacy instead argues that "grouping" is impermissible. This argument is meritless. The PSLRA explicitly provides for grouping and case law makes clear that investor groups can, and do, serve as the lead plaintiffs in securities fraud class action lawsuits. The Argo Investor Group is a small cohesive group of just three investors that "have submitted a joint declaration attesting to their ability and willingness to coordinate to effectively represent the class[]" and any claim otherwise does not rise to the actual "proof" required to find the group inadequate. *In re MGT Capital Invs., Inc., et al.,* 16 Civ. 7415 (NRB) 2017 U.S. Dist. LEXIS 59130, at *9 (S.D.N.Y. Apr. 11, 2017). Accordingly, the Argo Investor Group's should be granted in its entirety and all other motions should be denied.

## II.    ARGUMENT

### A.  Hawes Has Failed to Demonstrate His Financial Interest in the Action.

As discussed in the Argo Investor Group's opposition brief, Hawes has failed to provide the Court with any proof or explanation to substantiate his supposed financial interest in the action.

This is a serious issue, as the Court cannot simply rely on the loss number provided in the brief. *See Shupe v. Rocket Cos.*, 601 F. Supp. 3d 214, 219-20 (E.D. Mich. 2022) (disqualifying lead plaintiff movant where court was unable to "determine the reliability of the [movant's] losses-suffered calculation"); *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (holding that "the ***district court must calculate*** each potential lead plaintiff's financial interest in the litigation.").

Every movant that filed for lead plaintiff in this action provided a financial analysis in support of their motion, except for Hawes. Indeed, this is common practice in PSLRA cases. By not providing the Court with a loss analysis, Hawes "bespeaks a less than full commitment to transparency in providing the court with information that it ultimately would require to make its decision". *In re Atl. Power Corp. Sec. Litig.*, No. 13-10537-DPW, 2014 U.S. Dist. LEXIS 199843, at *1 & n.1 (D. Mass. Mar. 31, 2014). These loss analyses are particularly important as the PSLRA does not provide a specific loss calculation method to calculate financial interest so there is no real way to confirm a movant's "claimed loss" without seeing the math. *Murphy v. JBS S.A.,* No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262, at *10 (E.D.N.Y. Oct. 6, 2017). By not providing a loss calculation to the Court, Hawes has "needlessly complicated" these proceedings by virtue of "[his] failure to disclose all relevant information[.]" *Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 U.S. Dist. LEXIS 106515, at *19 (C.D. Cal. 2020), quoting *Cambridge Ret. Sys. v. Mednax, Inc.,* No. 18-61572-CIV-DIMITROULEAS/S, 2018 U.S. Dist. LEXIS 207064, at *13 (S.D. Fla. Dec. 6, 2018). This statement is true, even more so now, because it is clear Hawes reviewed the Argo Investor Group's opposition brief, and yet still refused to provide a loss analysis. *See* ECF No. 29, Hawes Opp at 2 ("Any movant that claims to be unable to calculate such losses from a compete [*sic*] PSLRA certification may be overreaching to be appointed Lead Plaintiff out of desperation").

Hawes' failure to provide a loss analysis is further complicated by the fact that Hawes' earliest transactions begin with large sales of 434,100 shares of ARBKF. ECF No. 24-2 (Hawes' PSLRA Certification). These sales resulted in over $709,000 in proceeds to Hawes. Hawes claims to have calculated his loss using the preferred LIFO methodology (ECF No. 29 at 4) but does not provide analysis to support this statement, nor did he provide the cost basis for the pre-class period purchases of the 434,100 ARBKF shares he sold during the Class Period. When an investor's earliest class period transactions are sales of stock rather than purchases under LIFO, then those earlier sales must be matched against the most-recently purchased shares—even when those shares were purchased prior to the Class Period. *See Mednax*, 2018 U.S. Dist. LEXIS 207064, at *13 (criticizing movant who failed to properly match excess class period sales against pre-class period holdings when LIFO is consistently applied to all class period sales); *see also Funko,* 2020 U.S. Dist. LEXIS 106515, at **18-19 (criticizing failure to offset excess class period sales against pre-class period holdings). Without an analysis not only can the Court not confirm Hawes' losses, but it cannot confirm if LIFO was consistently applied to Hawes' opening sales. Because Hawes is unwilling to disclose this information, it raises a red flag that he may have profited from the fraud by selling his shares of ARBKF at artificially inflated prices and is hiding windfall gains that should offset his Class Period loss.

Courts have disqualified movants when they fail to make a *prima facie* showing of typicality and adequacy under Rule 23. *Perez v. Hexo Corp.,* 2020 U.S. Dist. LEXIS 32381, at *7 (S.D.N.Y. Feb. 25, 2020). In *Hexo*, the court explained that "though [a lead plaintiff movant] need only make a preliminary showing that he satisfies the requirements of Rule 23, [he] nonetheless needs to provide enough information to make that preliminary showing." *Id*. at *6 (internal citations removed). Without providing some proof of adequacy in a movant's opening motion, it

allows the Court to "question whether [a movant] w[ould] meaningfully oversee and control the prosecution of th[e] action." *Id*. at *7. The premise underlying this holding applies with even greater force in the context of evaluating movants' respective losses. Indeed, courts are required to compare the movants' financial interests. *In re Aol Time Warner Sec. & "ERISA" Litig.,* 2003 U.S. Dist. LEXIS 145, at *4=*5 (S.D.N.Y. Jan. 8, 2003) ("The court should compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." (quoting *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002)), Without any analysis to substantiate a claimed financial interest, a court cannot reliably do this. A motion without the required loss analysis is deficient and should be rejected. Accordingly, Hawes' motion to be appointed lead plaintiff should be denied.[1]

### B. The Argo Investor Group Provided All Pertinent Loss Calculating Information, Including Section 11 Losses.

The necessity of providing a loss analysis cannot be understated. Hawes' opposition to the Argo Investor Group's motion confirms this point. Although he argues that the Argo Investor Group incorrectly calculated its Section 11 losses (Hawes Opp. at 10), the Argo Investor Group demonstrated its precise financial interest in support of its opening motion papers. *See* ECF No. 17-2. In the loss analysis, the Argo Investor Group provides all transaction information and matches each purchase to a sale on a LIFO basis. Further, the loss analysis provides the Argo Investor Group's *recoverable* loss and offsets that amount with any gains from intra-class period

---

[1] The PSLRA imposes a strict 60-day deadline for filing lead plaintiff motions. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).This means that a movant cannot file and serve a deficient motion and then cure it after the fact. Any attempt by Hawes to provide additional information in support of his motion at this point should be rejected as untimely. *Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.,* 2021 U.S. Dist. LEXIS 210962, at *9 (S.D.N.Y. Nov. 1, 2021) (declaration filed in further support of motion was considered untimely "since it should have submitted the declaration with its original motion"). *See also In re Boeing Co. Aircraft Sec. Litig.,* No. 19 CV 2394, 2019 U.S. Dist. LEXIS 198259, at *24 n.10 (N.D. Ill. Nov. 15, 2019) ("a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the  lead plaintiff selection process*"); Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

transactions. *See id.* (providing "Dura LIFO*" calculation). Thus, Hawes misstates the factual record in this case when he argues that the Argo Investor Group failed to provide the necessary information to evaluate its financial interest in the outcome of the litigation.

In addition to providing a detailed breakdown of its Section 10(b) losses, the Argo Investor Group provided its Section 11 losses in its opening motion papers. The Section 11 loss is far less detailed, as it is calculated using a statutory formula. *See* 15 U.S.C. §77k(e). Thus, whereas a Section 10(b) loss requires LIFO analyses, matching, and considerations of intra-class period trades, a Section 11 loss calculation is simply a function of the number of shares purchased in and/or traceable to the initial public offering. The Argo Investor Group's loss analysis contains the information necessary for this calculation and then some, as evidenced by its in-depth presentation of the Section 10(b) losses.

### C.  The Argo Investor Group is a Proper Group.

Hawes' opposition did not raise any issues with respect to the Argo Investor Group's Rule 23 qualifications nor its verified loss pursuant to the Exchange Act of $226,759.01. *See generally* ECF No. 29. The only attack comes from movant Lacy in regard to the Argo Investor Group being a "group" of investors. Lacy's argument is meritless.

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can only be rebutted upon proof that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See*, e.g., *In re MGT Capital Invs., Inc., et al.,* 16 Civ. 7415 (NRB) 2017 U.S. Dist. LEXIS 59130, at *9-*10 (S.D.N.Y. Apr. 11, 2017) (rejecting "attempt to find something nefarious" in order "to discredit" a movant's certification); *Foley v. Transocean, Ltd.,* 272 F.R.D. 126, 131-33 (S.D.N.Y. 2011)

6

(finding that the presumption "may only be rebutted upon 'proof'" of inadequacy or atypicality and rejecting challenge founded on speculation); *Kaplan v. Gelfond,* 240 F.R.D. 88, 95-96 (S.D.N.Y. 2007) (rejecting "inconclusive" argument proffered by competing movant in attempt to disqualify presumptive lead plaintiff).

Here, Lacy has provided no proof whatsoever that the Argo Investor Group is an inadequate class representative, as no proof exists. Rather, Lacy attempts to have the Argo Investor Group disqualified from being appointed by making speculative arguments. Further, contrary to Lacy's assertions, the Argo Investor Group is a small cohesive group of only three investors who have submitted a Joint Declarations detailing, *inter alia*, their respective backgrounds, their communications with each other. their understanding of this litigation and their responsibilities as lead plaintiffs appointed pursuant to the PSLRA, and their readiness to supervise counsel. *See* ECF. No. 17-4 Courts in the Second Circuit routinely appoint groups of investors as Lead Plaintiffs under such circumstances. *See, e.g.*, *Mustafin v. Greensky, Inc.,* No. 18-11071, 2019 U.S. Dist. LEXIS 55296, at *15 (S.D.N.Y. Mar. 29, 2019) (group of **three** investors that submitted a joint declaration was "presumptively cohesive" due to its small size); *White Pine Investments v. CVR Refining, LP,* No. 20 CIV. 2863 (AT), 2021 U.S. Dist. LEXIS 1199, at *5 (S.D.N.Y. Jan. 5, 2021) (group of two investors that submitted joint declarations provided the Court with "detailed plans regarding their involvement in the litigation and plans for cooperation" and was ultimately appointed, even though they lacked a pre-litigation relationship); *Simmons v. Spencer,* No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743, at *13 (S.D.N.Y. Apr. 24, 2014) ("[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only **five** members, and therefore presumptively cohesive."); *In re MGT Capital Invs., Inc*, 2017 U.S. Dist. LEXIS 59130,

at *8-*9 (group of investors that submitted a joint declaration appointed as lead plaintiff despite having "no relationship before th[e] litigation" and was found to "be able to function cohesively and [] effectively manage the litigation" ); *Jinkosolar*, 2012 U.S. Dist. LEXIS 38489, at *21-*23 (appointing ***four***-member investor group, finding that joint declaration submitted with motion "meets the standards . . . for demonstrating cohesiveness"); *Blue Apron,* 2017 U.S. Dist. LEXIS 207531, at *17(appointing group of ***four*** unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *Brady v. Top Ships Inc.*, No 17-CV-4987 (JFB) (SIL), 2018 U.S. Dist. LEXIS 121765, at *20 (E.D.N.Y. July 20, 2018) (appointing group of ***three*** investors as lead plaintiff, finding the group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class.").

The Joint Declaration filed by the Argo Investor Group details their communication and plans for coordination in the future including: (1) the decision to join together and serve as co-lead plaintiffs; (2) the discussion of and agreement on attorneys' fees; (3) a strategy for prosecuting the Actions; (4) the importance of joint-decision making and remaining in communication to discuss and make timely decisions; (5) a tie-breaking mechanism in the event a consensus cannot be reached after consulting with counsel; (6) their active involvement in the litigation thus far; and (7) the overall driving directive that the litigation be conducted in a cost-effective manner to obtain "the largest recovery possible". ECF No. 17-4 Joint Decl. at ¶¶6, 10-12This is not the type of conclusory declarations that Lacy characterizes it to be. *See Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *17-18 (S.D.N.Y. June 21, 2018) (relying on initial and supplement declaration and noting that "courts have appointed similar

8

groups as lead plaintiffs upon submission of sworn declarations"); *Brady v. Top Ships, Inc.*, 324 F. Supp. 3d 355, 346 (E.D.N.Y. 2018) (relying on joint declaration detailing "plans for cooperation and coordination" to find proposed group "is not the type of lawyer-driven group that other courts have cautioned against approving").

Moreover, it does not matter that Lacy individually has a larger loss than any of the Argo Investor Group members individually. *Silverberg v. Dryships Inc.,* No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *24, *31 (E.D.N.Y. Aug. 21, 2018) (appointing a group of *five* investors with no pre-litigation relationship, despite another shareholder claiming the largest individual loss). "The fact that [Lacy] may have suffered the greatest loss of any individual member of the putative class is insufficient to 'override the presumption in favor of the *group* with the largest loss.'" *Id*. at *24 (citing *Brady*, 324 F. Supp. 3d at 350, n. 9). Accordingly, the Argo Investor Group should be appointed.

## III.    CONCLUSION

For the foregoing reasons, the Argo Investor Group respectfully requests that the Court grant its Motion and enter an Order: (1) appointing the Argo Investor Group as Lead Plaintiff, (2) approving its selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: April 17, 2023

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ Adam M. Apton
Adam M. Apton (AS-8383)
55 Broadway, 4th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

9

*Lead Counsel for the Argo Investor Group,*
*and [Proposed] Lead Counsel for the Class*