**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AARON MURPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ARGO BLOCKCHAIN PLC, PETER WALL, ALEX APPLETON, MATTHEW SHAW, SARAH GOW, COLLEEN SULLIVAN, and MARIA PERRELLA,<br><br>Defendants. | Case No. 1:23-cv-00572-NRM-SJB<br><br>Date of Service: April 17, 2023 |

**RICHARD HAWES'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 5

I.     THE PRESUMPTION IN FAVOR OF HAWES HAS NOT BEEN REBUTTED ........... 5

     A.     Hawes Has the Largest Financial Interest in the Relief Sought by the Class ......... 5

     B.     Ironically, The Argo Group Failed To Include Properly Verified Transaction Data And So Its Loss Calculations Are Truly Unverifiable ................................. 10

     C.     Hawes Satisfies Rule 23 ...................................................................................... 11

     D.     Hawes's Selection of the Faruqi Firm as Lead Counsel Should Be Approved .... 12

     E.     The Competing Motions of Lacy and the Argo Investor Group Should Be Denied ................................................................................................................. 12

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Aramic LLC v. Revance Therapeutics, Inc.*,
   No. 5:21-cv-09585-EJD, Order Granting Tang Family Inv. Grp.'s Mot. for
   Appointment as Lead Pl. and Approval of Lead Counsel (N.D. Cal. Sept. 7,
   2022) ....................................................................................................................................3

*Atanasio v. Tenaris S.A.*,
   331 F.R.D. 21 (E.D.N.Y. 2019) ..........................................................................................4

*In re Atlantic Power Corp. Securities Litigation*,
   Nos. 13-10537-DPW; 13-10991-DPW,
   2014 WL 12628589 (D. Mass. Mar. 31, 2014)....................................................................7

*Bo Young Cha v. Kinross Gold Corp.*,
   No. 12 Civ. 1203(PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012)................................8

*Born v. Quad/Graphics, Inc.*,
   No. 19-CV-10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) .................................8

*Cambridge Retirement System v. Mednax, Inc.*,
   Case No. 18-61572-CIV-DIMITROULES/SNOW,
   2018 WL 8804814 (S.D. Fla. Dec. 6, 2018) .......................................................................8

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .............................................................................................7

*In re Comdisco Securities Litigation*,
   150 F. Supp. 2d 943 (N.D. Ill. 2001) .................................................................................8

*Cook v. Allergan PLC*,
   No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)................................2

*Dang v. Amarin Corp. PLC*,
   No. 21-cv-19212 (GC)(TJB), 2022 WL 15524944 (D.N.J. Oct. 27, 2022)............................9

*Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
   529 F. Supp. 3d 385 (E.D. Pa. 2021) ..................................................................................3

*Malriat v. QuantumScape Corp.*,
   No. 3:21-cv-00058-WHO, 2021 WL 1550454 (N.D. Cal. Apr. 20, 2021)...............................6

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011)...................................8

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) .................................................................................4

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
   No. 07-02830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ..............................9

*Shupe v. Rocket Cos.*,
   601 F. Supp. 3d 214 (E.D. Mich. 2022)..............................................................6, 7

*Sofran v. LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ..............................................................................6

*In re Spero Therapeutics, Inc. Sec. Litig.*,
   No. 22-CV-3125 (LDH) (RLM),
   2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) .........................................................9

*Wilson v. Peloton Interactive*,
   No. 1:21-cv-02369 (CBA)(PK), 2021 WL 7906555 (E.D.N.Y. Oct. 26, 2021)........................3

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B)(v)...................................................................................12

15 U.S.C. § 78u-4(a) ...........................................................................................6, 12

**MEMORANDUM OF LAW**

Richard Hawes[1] ("Hawes") respectfully submits this reply memorandum of law ("Reply") in further support of his motion for an Order: (1) appointing Hawes as Lead Plaintiff in the above-captioned action; (2) approving Hawes's selection of Faruqi & Faruqi LLP (the "Faruqi Firm") as Lead Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper and in reply to the opposition briefs filed by movants Alex Lacy[2] ("Lacy" or "Movant Lacy") and the Argo Investor Group (also referred to as the "Argo Group").[3]

**INTRODUCTION**

Hawes has demonstrated that he is the presumptive Lead Plaintiff for the Exchange Act claims and Securities Act claims in this Action. Hawes has the largest financial interest in the Exchange Act claims based on 3 out of 4 of the *Lax* factors, including the most important factor, losses suffered of **$631,886.17** calculated using the well accepted Last-In-First-Out ("LIFO") accounting method. The other movant still contesting Hawes' motion, the Argo Group, claims to have suffered only **$226,759.01** in Exchange Act losses.

Hawes also has the largest financial interest in the Securities Act claims with losses of **$466,540.95** using the statutory loss methodology proscribed by Section 11 of the Securities Act. The Argo Group claims only **$193,822.15** in Section 11 damages.

---

[1]    All terms not otherwise defined herein shall have the same meaning as those terms in Richard Hawes's Memorandum of Law in Support of His Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Opening Br.") (ECF No. 23) and his Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Hawes Opp.") (ECF No. 29). All references to "Ex. __" are exhibits to the Declaration of James M. Wilson, Jr. in Support of Richard Hawes's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel unless otherwise noted. ECF No. 24. All citations, footnotes and internal quotation marks are omitted and all emphases are added unless otherwise noted.

[2]    Alex Lacy's Response to the Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Lacy Response"). ECF No. 27.

[3]    The Argo Investor Group's Memorandum of Law in Opposition to the Competing Motions for Appointment as Lead Plaintiff ("Argo Group Opp."). ECF No. 28.

Movant Lacy has acknowledged that Hawes appears to have the largest financial interest in the Exchange Act and Securities Act claims "as measured by the movants' respective losses under each claim[.]" *See* Lacy Response 4.  Hawes has also shown that he meets the typicality requirements of Rule 23 and therefore should be appointed Lead Plaintiff over the remaining movant. Opening Br. (ECF Nos. 23, 24), Hawes Opp. (ECF No. 29).  The Argo Group, which has much smaller losses than Hawes, does not dispute that Hawes is adequate under Rule 23 standards to serve as lead plaintiff and has met the PSLRA's statutory mandate to timely file a PSLRA certification.  Further, the Argo Group does not dispute that Hawes, in his PSLRA Certification, accurately lists all of his relevant Argo stock transactions (listing the dates of purchases and sales, the purchase prices and sales prices and the number of Argos shares purchased and sold).[4]  *See* Ex. B. Importantly, the Argo Group also does not ***expressly dispute*** that Hawes has the largest losses.  Further, the Argo Group does not ***expressly dispute*** that Hawes has correctly calculated his losses and other Lax factors based on his listed transactions. Instead, the Argo Group, having no meritorious direct challenge, simply attempts to plant seeds of doubt that Hawes might not have calculated his losses correctly.  This is nonsense and another example of "the depths to which lawyers will descend in an effort to become lead counsel in a PSLRA case."  *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *2 n.1 (S.D.N.Y. Mar. 21, 2019).

Hawes' LIFO calculation were done correctly, as acknowledged by movant Lacy. If Hawes has not done his LIFO calculation correctly it is a virtual certainty that the other movants

---

[4]    Hawes joins with Lacy's argument against the aggregation of the Argo Group's joint losses. As argued by Lacy, while courts may under certain circumstances permit the aggregation of losses for lead plaintiff purposes, the group must demonstrate that such aggregation and appointment of the group will best serve the class over the appointment of a single lead plaintiff movant, which the Argo Group has failed to do. Lacy Opp. 2-4.

would have caught the mistake and exploited it.  That is how it works.  If you put Hawes's

transaction data into the exact same format as used by the Argo Group movants, and use the

same common LIFO methodology they used, not surprisingly the result is the same.  Hawes's

losses remain at **$631,886.17.**   *See* Exhibit A to the Declaration of James M. Wilson, Jr. in

Further Support of Richard Hawes's Motion for Appointment as Lead Plaintiff and Approval of

Lead Counsel ("Wilson Reply Decl."), which does exactly that.  The Argo Group, of course, was

entirely capable of plugging Hawes's transaction data into their own loss chart.  They have

intentionally avoided that exercise clearly because the result would dispel the seeds of doubt they

wish to sow.

The PSLRA does not require movants to include a loss chart, and movants routinely elect

to not include that gratuitous attorney work product, as each competing movant is capable of

challenging the claimed loss number of another if it is inaccurate.  Again, no such direct

challenge has been made in this case.  Further, courts routinely have appointed lead plaintiffs

that have elected to not include a loss chart.  *See Halman Aldubi Provident and Pension Funds

Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 411 (E.D. Pa. 2021) ("*Teva*"); *Wilson v.

Peloton Interactive*, No. 1:21-cv-02369 (CBA)(PK), 2021 WL 7906555, at *5 (E.D.N.Y. Oct.

26, 2021), *report and recommendation adopted, In re Peloton, Inc., Sec. Litig.*, No. 1:21-cv-

02369 (CBA)(PK) (E.D.N.Y. Nov. 16, 2021) ("*Peloton*"); *Aramic LLC v. Revance Therapeutics,

Inc.*, No. 5:21-cv-09585-EJD, Order Granting Tang Family Inv. Grp.'s Mot. for Appointment as

Lead Pl. and Approval of Lead Counsel (N.D. Cal. Sept. 7, 2022), ECF No. 50 ("*Revance*"),

Wilson Reply Decl., Exhibit B; *see also Teva*, Decl. of Timothy J. Peter in Supp. of the Inv.

Grp.'s Mot. for Appointment as Lead Pl. and Approval of Lead Counsel (E.D. Pa. Nov. 23,

2020), ECF No. 8-2, Wilson Reply Decl. Exhibit C; *Peloton*, Decl. of James M. Wilson, Jr. in

3

Supp. of Richard Neswick's Mot. for (1) Consolidation; (2) Appointment as Lead Pl.; and (3) Approval of Lead Counsel (E.D.N.Y. June 28, 2021), ECF No. 27, Wilson Reply Decl., Exhibit D; *Revance*, Decl. of Benjamin Heikali in Supp. of Tang Family Inv. Grp.'s Mot. for Appointment as Lead Pl. and Approval of Lead Counsel (N.D. Cal. Feb. 8, 2022), ECF No. 20-1, Wilson Reply Decl. as Exhibit E.

Likewise, the PSLRA does not specify a preferred accounting method. *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623 (E.D. Wis. 2009). However, in this case both the Argo Group and Hawes expressly chose the LIFO methodology to calculate losses as is the common practice. "LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale." *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 27 n.5 (E.D.N.Y. 2019). Most tellingly, the Argo Group had no trouble applying the LIFO methodology to its own transactions, but was unwilling or unable to attempt to apply that methodology to Hawes's transactions. This is true even though the Argo Group did not dispute the accuracy of those reported transactions. As mentioned earlier, if the Argo Group had entered Hawes's transactions into its own loss chart format,[5] the result would be as shown below and would again confirm that Hawes' losses of **$631,886.17.** *See* Wilson Reply Decl., Exhibit A. The Argo Group's claim that Hawes's losses cannot be verified is a sham, and an ironic one at that. The fact is, as more fully argued below, ***the only movant whose losses are demonstrably not subject to verification is the Argo Group.*** One Argo Group member included two stock transactions in his loss calculation that were not included in his PSLRA certification.

---

[5]    The Argo Group characterized their chart as an "analysis" for the first time in their opposition papers. The term "analysis" appears nowhere in their opening papers or in their chart itself and their chart in fact contains no analysis and no explanation of the methodology to calculate LIFO losses.

Therefore, it is actually the Argo Group whose damages cannot be verified.  Hawes's damages are fully supported by a complete, truthful, and accurate PSLRA declaration.

The Argo Group should have withdrawn from this case.  That is how it is done. Instead, they have elected to stay and pursue a spurious argument in an attempt to be appointed Lead Plaintiff, while having far from the largest financial interest.  The Argo Group feigns the inability to verify Hawes's LIFO loss calculations and challenges his standing as the presumptive Lead Plaintiff.   This challenge is fabricated and meritless.   Accordingly, the motion of the Argo Group should be denied and the motion of Hawes to be appointed Lead Plaintiff should be granted.

**ARGUMENT**

**I.    THE PRESUMPTION IN FAVOR OF HAWES HAS NOT BEEN REBUTTED**

    **A.    Hawes Has the Largest Financial Interest in the Relief Sought by the Class**

As recognized by Lacy and as set forth in prior briefing, Hawes undisputedly has the largest financial interest in the relief sought by the class and is therefore the presumptive lead plaintiff.

The Argo Group, in an attempt to cast doubt on Hawes as the presumptive lead plaintiff, argues that Hawes's losses cannot be calculated because Hawes did not provide a loss chart of the type the Argo Group's counsel created in support of that group's motion. *See* Argo Opp. 5-9. Argo claims that "the Court and the parties [are] unable to determine how Hawes calculated his 'financial interest[.]'" Argo Group Opp. 2-4.  This turns a blind eye to the fact that Hawes disclosed how he calculated his financial interest: "during the Class Period, Movant purchased 52,225 net and 178,425 total Argo ADSs, expended $ 102,139.68 in net funds and suffered *LIFO* losses of $631,886.17 from his ADSs attributable to the fraud."  Opening Br. 9.

There is no requirement under the PSLRA to file demonstrative attorney-generated work

5

product, known as "loss charts" with an initial motion. Should there be a true error in the calculations, there is no limit to the number of such charts and calculations that the movants choose to file in an attempt to expose the error. It has held that "the court may select accounting methods that are both rational and consistently applied." *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058-WHO, 2021 WL 1550454, at *3 (N.D. Cal. Apr. 20, 2021). The PSLRA specifies exactly what data that a lead plaintiff must provide in support of its claim of damages, and it is all that is required to verify the calculations and to mount a real challenge if there is error. It requires that a movant file a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint[.]" *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv). This is exactly what Hawes did. There is no requirement for a supplemental loss "chart" or other demonstrative aid. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004) (rejecting effort to impose requirements on lead plaintiff movants beyond those mandated by the PSLRA). In fact, the Argo Group has cited no case law supporting the assertion that a movant is ***required*** to submit a loss chart of the type that their lawyers created regarding their claimed losses.

The authorities cited by the Argo Group did not require the filing of a supplemental loss chart, especially one like the Argo Group's chart that lacks any meaningful analysis or explanations. In *Shupe v. Rocket Cos.*, 601 F. Supp. 3d 214, 219-20 (E.D. Mich. 2022), cited by the Argo Group, the presumptive lead plaintiff, represented by the Argo Group's counsel, was not appointed lead plaintiff because their initial brief only disclosed a LIFO loss amount and did not disclose any of the other *Lax* factors. Although that movant in that case appeared to have included the inputs to determine the *Lax* factors in their chart, the court noted:

> But the Elwell/Tragresser Group has provided no explanation of how to read those documents or the relevant values to be derived from them.

6

*Id.* at 220 n.2.  The Argo Group's chart suffers from the same defect as that noted by the court in *Shupe* because they have failed to explain how to read the chart or the relevant values. Hawes reported all his *Lax* factors in his opening motion and now has submitted a chart that shows Hawes' losses.[6] Decl. of James M. Wilson, Jr. in Further Supp. of Richard Hawes's Mot. for Appointment as Lead Pl. & Approval of Lead Counsel ("Wilson Reply Decl."), Ex. A.

In re Atlantic Power Corp. Securities Litigation, Nos. 13-10537-DPW; 13-10991-DPW, 2014 WL 12628589, at *1 & n.1 (D. Mass. Mar. 31, 2014), is similarly distinguishable because in that case the disqualified movant initially declined to provide any specific loss amount, where Hawes has been fully transparent and made full disclosure of his transactions and loss calculations.  Further, in *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), cited by the Argo Group, there is absolutely no mention of a supplemental loss chart requirement.

In a further attempt to obfuscate Hawes's clearly larger financial interest, the Argo Group claims that Hawes failed to account for his initial Class Period transactions in Argo common stock at the start of the Class Period. *See* Argo Opp. 8-9.  As an initial matter, Argo's common stock was traded on the pink sheets prior to the Company's IPO and start of the Class Period and therefore should be netted out from loss calculation and/or converted into the value of Argo's publicly traded ADSs during the Class Period, which is what Hawes did.  Hawes has correctly accounted for these common stock sales in his *Lax* factor disclosure.  *See* Opening Br. 9 n.3. Notably, the Argo Group did not challenge Hawes's accounting for the common stock by converting them to the requisite number of ADSs in order to properly calculate net and total

---

[6]    Because the Argo Group excluded its common stock analysis from their initial reporting of *Lax* factors, Hawes has done the same in this chart. When using this methodology, there is a slight difference in Hawes's *Lax* factors impacting gross shares purchased, net shares purchased, and funds expended. Under this method, Hawes prevails on all of the *Lax* factors.

shares, or the impact on funds expended.  The conversion was done because to compare common

stock with the ADSs at issue in the instant suit would be akin to comparing apples and oranges.

Indeed, the Argo Group appears to understand this concept as they declined to incorporate losses

from Class Period sales of Argo common stock by a group member in their loss calculation. *See*

Argo Group Opening Br. 7 n.3, ECF No. 16. Given that the Argo Group declined to incorporate

losses on Argo common stock in their loss calculation, any accusation that Hawes is attempting

to use "manipulative accounting methods" to inflate his losses is wrong.[7]

Hawes has losses of **$631,886.17** under the Exchange Act and **$466,540.95** under the

Securities Act were calculated using the LIFO accounting method favored by the courts of this

Circuit. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850,

at *3 (S.D.N.Y. May 31, 2012) ("[T]he overwhelming trend both in this district and nationwide

has been to use LIFO to calculate such losses.").  Throughout the briefing of this matter, Hawes

has consistently stated that the LIFO accounting method was used to calculate his losses. *See*

Opening Br. 8-9; Hawes Opp. 4-5. In fact, the Argo Group agrees that this is the proper

---

[7]      The Argo Group's case law on this point does not dictate otherwise. In *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001), the court criticized a movant for applying the First-In-First-Out ("FIFO") methodology to inflate its losses. That is not the case here as Hawes used the LIFO methodology to calculate his losses. In *Cambridge Retirement System v. Mednax, Inc.*, Case No. 18-61572-CIV-DIMITROULES/SNOW, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018), the court criticized lead plaintiff movants for failing to carefully account for class period sales of pre-class period stock holdings of the same type.  The instant matter is distinguishable because the pre-class period holdings that were sold during the Class Period here were Argo common stock, rather than Argo ADSs. As the Argo Investor Group has acknowledged, losses on Argo common stock are not included in loss calculations and therefore not relevant to the loss calculations here.  The instant matter is also distinguishable because the two stocks at issue are not the same, defying one for one accounting.  *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) involved concerns that a potential lead plaintiff was a net seller and net gainer under one of the class periods proposed; such concerns are inapplicable here. *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *10-11 (N.D. Cal. Feb. 15, 2011) likewise involved concerns about the status of a lead plaintiff movant as a net seller as well as a dispute about the application of FIFO over LIFO; again such concerns are not present here.

accounting methodology for calculating the losses of lead plaintiff movants and the same method they chose to use in calculating their own losses. *See* Argo Group Opp. 6-8.

To the extent courts or movants have minor differences in the assumptions they use when applying loss calculation methodology, it is a simple matter to input the statutorily required data from a movant's PSLRA certification into any preferred loss calculation methodology and then compare apples to apples. The Argo Group is unwilling to do this because their losses are clearly far less than Hawes's losses. The Argo Group's losses are far less than Hawes's losses under any reasonable accounting analysis, including the "preferred" LIFO methodology. *See In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22-CV-3125 (LDH) (RLM), 2022 WL 4329471, at *6 n.7 (E.D.N.Y. Sept. 19, 2022) ("Thus, at this early stage of the litigation 'it is sufficient [for the Court] to find that, under any analysis, the financial interest of [Memon] exceeds that of [Saad].'"); *Dang v. Amarin Corp. PLC*, No. 21-cv-19212 (GC)(TJB), 2022 WL 15524944, at *7 n.5 (D.N.J. Oct. 27, 2022) ("…even if the Court accepted the higher loss calculation of $1,024,084.19, Priven's loss would still not exceed or be comparable to the losses of Dang, Terlecki, or the Pension Fund.").[8]

Hawes has the largest losses of any remaining movant under both the Exchange Act and the Securities Act. There is no scenario where the Argo Group's losses are larger than those of Hawes's. As outlined in above, and as acknowledged by Lacy, Hawes has the largest financial interest in the relief sought by the Class under any acceptable methodology. The arguments of the Argo Group are wholly without merit and Hawes should be appointed Lead Plaintiff and his

---

[8]    *See also In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 WL 5173851, at *4 (W.D. Tenn. Dec. 15, 2010) ("The Court finds that the RMK Investor Group has suffered the largest loss and has the largest financial interest in the case regardless of the class period and calculation method employed. *Cf. Plumbers & Pipefitters Local* 562, 256 F.R.D. at 624 (declining to decide which calculation methodology is best where all calculations lead to the same conclusion about who has the greatest financial interest).").

counsel, Faruqi & Faruqi LLP, should be appointed Lead Counsel.

**B.    Ironically, The Argo Group Failed To Include Properly Verified Transaction Data And So Its Loss Calculations Are Truly Unverifiable**

It is ironic that the Argo Group's losses are actually the ones that are unverifiable.  As shown in detail below, the chart that the Argo Group touts includes post-class period transactions that **are not** included in the sworn PSLRA certification of one group member, Ever Garcia, *making it impossible to verify the Argo Group's claimed losses*.

As shown below in yellow highlighting, the attorney-created loss chart provided by the Argo Group shows that movant Ever Garcia made two sales on October 18, 2022, after the class period, totaling 1500 shares.

| | | | | | Ever Garcia | | |
| Sales | | | | | | | |
| Trade Date | Shares Sold During the CP | Shares Sold During the LBP1 | Price Per Share2 | Proceeds from CP Sales | Proceeds from LBP Sales |
|---|---|---|---|---|---|
| 05-19-2022 | 187 | | $ 06.52 | $ 1,218.51 | - |
| 06-15-2022 | 700 | | $ 04.05 | $ 2,835.07 | - |
| 10-18-2022 | | 241 | $ 01.88 | | $ 453.08 |
| 10-18-2022 | | 1259 | $ 01.88 | | $ 2,366.92 |
| | | | | | - |
| 05-19-2022 | 13 | | $ 06.52 | $ 84.71 | - |
| | 900 | 1500 | | $4,138.29 | $2,820 |

Apton Decl. Ex. B, ECF No. 17-2.

These sales were used in the calculation of both Exchange Act and Securities Act losses, however they are not included in the PSLRA Certification that Mr. Garcia provided in support of the Argo Group's opening motion as shown below.

| Case Name | Argo Blockchain plc |
|---|---|
| Ticker | ARBK |
| Class Period | 09-23-2021 to 10-10-2022 |

| Client Name |
|---|
| Ever Garcia |

| Date of Transaction | Transaction Type | Quantity | Price per Share |
|---|---|---|---|
| 09-27-2021 | P | 2774 | $ 16.4982 |
| 09-27-2021 | P | 13 | $ 16.7950 |
| 05-19-2022 | S | -200 | $ 06.5161 |
| 06-15-2022 | S | -700 | $ 04.0501 |

Apton Decl. Ex. A, ECF No. 17-1.

The reliance on unsworn and previously unmentioned trade data to calculate damages calls into question the veracity and reliability of the Argo Group's loss calculation. This information was slipped into the loss calculation without notice to the other movants of its use or existence. The fact that it is unsworn and inconsistent with the PSLRA certification actually does make verification of the Argo Groups losses impossible. By contrast, Hawes has submitted all pertinent information to allow any competing movant to accurately verify his losses.

The Argo Group's claim that it has the largest "verifiable financial interest" is wrong for two reasons. The Argo Group's interest is not the largest (whether the unsworn transactions are included or not), and it is patently and demonstrably not verifiable because the data relied on was not verified under oath in the movant's PSLRA declaration.

### C.    Hawes Satisfies Rule 23

Not only does Hawes have the largest financial interest of the remaining movants, but no movant has challenged Hawes's adequacy and typicality. As demonstrated in detail in his Opening and Opposition Briefs, Hawes's claims are typical of the Class's claims, and he is more than adequate to protect the interests of the Class. *See* Opening Brief 9-11; Hawes Opp. 6-8.

11

Additionally, no movant challenged Hawes's selection of experienced counsel in the Faruqi Firm. Simply put, Hawes has met all the lead plaintiff requirements under the PSLRA, and he respectfully asks the Court to appoint him Lead Plaintiff for the action.

**D.      Hawes's Selection of the Faruqi Firm as Lead Counsel Should Be Approved**

As with Hawes's typicality and adequacy, no remaining movant has challenged Hawes's selection of the Faruqi Firm as his counsel. Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v) and 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. It is undisputed that Hawes has selected and retained an experienced firm to represent his interests and the interests of the Class. Accordingly, Hawes respectfully requests that the Court approve his selection of the Faruqi Firm as Lead Counsel.

**E.      The Competing Motions of Lacy and the Argo Investor Group Should Be Denied**

As outlined in great detail above, and as acknowledged by competing movant Lacy, the remaining movants possess a smaller financial interest in the litigation than Hawes. Therefore, the arguments of the Argo Group notwithstanding, under the PSLRA, their motions for lead plaintiff should be denied.

## CONCLUSION

For the foregoing reasons, Hawes respectfully requests that the Court deny all competing motions for Lead Plaintiff and grant his motion and: (1) appoint him as Lead Plaintiff; (2) approve his selection of the Faruqi Firm as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: April 17, 2023                                    Respectfully submitted,

                                                    **FARUQI & FARUQI, LLP**

                                                    By:      */s/ James M. Wilson, Jr.*
                                                                James M. Wilson, Jr.

12

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
         rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Richard Hawes and [Proposed] Lead Counsel for the putative Class*

13