UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AARON MURPHY, *individually and on behalf of all*
*others similarly situated*,

                                   Plaintiff,

                                                          **ORDER**
          -against-                              23-CV-572-NRM-SJB


ARGO BLOCKCHAIN PLC, PETER WALL, ALEX
APPLETON, MATTHEW SHAW, SARAH GOW,
COLLEEN SULLIVAN, and MARIA PERRELLA,

                                   Defendants.
------------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

     Plaintiff Aaron Murphy ("Murphy") filed this putative class action pursuant to the

Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the

"Exchange Act") against Argo Blockchain plc ("Argo") and certain of its officers and

directors on January 26, 2023.[1]  (Class Action Compl. dated Jan. 26, 2023 ("Compl."),

Dkt. No. 1).  He alleges that Defendants made false and misleading public statements in

connection with and following Argo's September 23, 2021 initial public offering (the

"IPO").  (*Id.* ¶¶ 1–15, 40–76).  The putative class is comprised of investors who

purchased or otherwise acquired: (1) Argo's American Depository Shares ("ADSs")

---

[1] The individual defendants are officers or directors of Argo.  (Compl. ¶¶ 22–32.)
Peter Wall ("Wall") has served as Argo's CEO and Alex Appleton ("Appleton" and
together with Wall, the "Exchange Act Individual Defendants") has served as its CFO.
(*Id.* ¶¶ 22–24).  Matthew Shaw ("Shaw"), Sarah Gow ("Gow"), Colleen Sullivan
("Sullivan"), and Maria Perrella ("Perrella" and together with Shaw, Gow, and Sullivan,
the "Securities Act Individual Defendants") each served as a member of Argo's Board of
Directors at the time of Argo's September 23, 2021 initial public offering (the "IPO").
(*Id.* ¶¶ 27–32).

pursuant and/or traceable to its IPO; or (2) Argo securities between September 23, 2021 and October 10, 2022. (*Id.* ¶ 1).

Pending before the Court are competing motions for appointment as Lead Plaintiff and Lead Class Counsel. For the reasons stated below, the motion of Richard Hawes for appointment as Lead Plaintiff, and for appointment of Faruqi & Faruqi, LLP as Lead Counsel for the class, is granted. (Mot. to Appoint Counsel dated Mar. 27, 2023 ("Hawes Mot. Notice"), Dkt. No. 22). The motions for appointment as Lead Plaintiff and appointment of Lead Class Counsel filed by Benjamin Lamontagne, Ever Garcia, and Michael Phillips, (Mot. to Appoint Counsel dated Mar. 27, 2023, Dkt. No. 15), and Alex Lacy, (Mot. to Appoint Counsel dated Mar. 27, 2023, Dkt. No. 18), are denied. Two other motions for appointment as Lead Plaintiff and appointment of Lead Class Counsel filed by Brian Begay and Mohit Mohindru were supplemented by notices of non-opposition.[2] Both of these motions are denied as moot.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Argo engages in the cryptocurrency mining business, including the mining of Bitcoin or Bitcoin equivalents (together, "BTC"), and maintains mining machines located in Canada and Texas (the "Texas Facility"). (Compl. ¶¶ 2–3). It trades on the NASDAQ under the ticker symbols "ARBK" and "ARBKL." (*Id.* ¶¶ 18, 21). On August 19, 2021, Argo filed a registration statement on Form F-1 (the "Registration Statement") with the SEC. (*Id.* ¶¶ 4, 37). After several amendments, this was declared effective by the SEC on September 22, 2021. (*Id.*). On September 23, 2021, Argo conducted the IPO

---

[2] *See* Mot. to Appoint Counsel by Begay dated Mar. 27, 2023, Dkt. No. 13 (withdrawn by Notice dated Apr. 10, 2023, Dkt. No. 26); Mot. to Appoint Counsel by Mohindru dated Mar. 27, 2023, Dkt. No. 21 (withdrawn by Notice dated Apr. 10, 2023, Dkt. No. 25).

and filed a prospectus that incorporated the Registration Statement (together, the "Offering Documents"). (*Id.* ¶¶ 5–6, 38–39). In the IPO, Argo issued 7.5 million American Depository Shares at a price of $15.00 per ADS, raising approximately $105 million. (*Id.* ¶¶ 6, 39). Each ADS represents ten ordinary shares. (Compl. ¶ 18).

The Complaint alleges the Offering Documents failed to disclose four adverse facts: namely that (1) Argo was highly susceptible to and/or suffered from significant capital constraints, electricity and other costs, and network difficulties; (2) these issues hampered Argo's ability to mine BTC, execute its business strategy, meet its obligations, and operate its Texas Facility; (3) Argo's business was less sustainable than Defendants had led investors to believe; and (4) Argo's business and financial prospects were overstated. (*Id.* ¶¶ 3, 7, 40–47). The Complaint further alleges that Argo made materially false and misleading statements after the IPO, (*id.* ¶ 7), in the press releases announcing a purchase agreement for cryptocurrency mining machines, Argo's Q3 2021 results, its full year 2021 results, its 2021 Form 10-K annual report, the opening of the Texas Facility, and its Q1 2022 results. (*Id.* ¶¶ 48–62).

On June 7, 2022, Argo announced in a press release that it had mined 25% fewer BTC in May 2022 compared to April 2022, and its ADS price fell 4.4%. (*Id.* ¶¶ 63–64). On October 7, 2022, Argo announced measures to reduce costs and preserve capital, among other things, and its ADS price fell 23.26%. (Compl. ¶¶ 68–72). A press release issued on October 11, 2022 provided that Argo's CTO would be stepping down from his role effective October 15, 2022. (*Id.* ¶ 73). Argo's ADS price fell another 10.98%. (*Id.* ¶ 74).

This action was commenced on January 26, 2023. The Complaint contains four counts, for violations of: (1) section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and

Rule 10b-5, 17 C.F.R. § 240.10b-5, against Argo and the Exchange Act Individual

Defendants (Count I); (2) section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against

the Exchange Act Individual Defendants (Count II); (3) section 11 of the Securities Act,

15 U.S.C. § 77k, against Argo and the Securities Act Individual Defendants (Count III);

and (4) section 15 of the Securities Act, 15 U.S.C. § 77o, against the Securities Act

Individual Defendants (Count IV).  (Compl. ¶¶ 86–115).

DISCUSSION

I.      Lead Plaintiff Determination

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-

4, requires the Court to appoint as "Lead Plaintiff" the member of the putative class that

the Court determines to be the "most adequate plaintiff," *i.e.*, the member the Court

determines to be "most capable of adequately representing the interests of class

members."  15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).[3]

"The PSLRA [first] requires a plaintiff who files [the initial] complaint to publish,

in a widely circulated business-oriented publication or wire service, a notice advising

members of the purported class of 'the pendency of the action, the claims asserted

therein, and the purported class period' and permits that, 'not later than 60 days after

the date on which the notice is published, any member of the purported class may move

the court to serve as lead plaintiff.'" *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 25–26

(E.D.N.Y. 2019) (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)).

---

[3] "[C]ourts use the same construction standards for PSLRA decisions" to decide
motions for lead plaintiff and class counsel under the Securities Act and the Exchange
Act because the "the relevant language of both versions of the PSLRA is identical." *Ford
v. Voxx Int'l Corp.*, No. 4-CV-4183, 2015 WL 4393798, at *2 n.1 (E.D.N.Y. July 16,
2015); 15 U.S.C. § 77z-1; 15 U.S.C. § 78u-4.  Since the Complaint contains claims under
both the Securities Act and Exchange Act, citations to both statutes are provided.

On January 26, 2023—the same day the Complaint was filed—Pomerantz LLP, counsel for Murphy, filed a notice in *Globe Newswire* about the lawsuit. (*See* Notice dated Jan. 26, 2023, attached as Ex. A to Decl. of James M. Wilson, Jr. in Supp. of Richard Hawes's Mot. dated Mar. 27, 2023 ("Wilson Decl."), Dkt. No. 24). "*Globe Newswire* is a suitable vehicle for meeting the statutory requirement that notice be published." *Xiangdong Chen v. X Fin.*, No. 19-CV-6908, 2020 WL 2478643, at *2 (E.D.N.Y. May 13, 2020) (quotations omitted). The period to file any motion for appointment as Lead Plaintiff, therefore, ended on March 27, 2023.

Hawes's motion was filed on March 27, 2023, (*see* Hawes Mot. Notice), and was therefore timely. *See* 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II), 78u-4(a)(3)(A)(i)(II); *e.g.*, *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, No. 16-CV-8260, 2017 WL 775850, at *4 (S.D.N.Y. Feb. 28, 2017) (finding motion for lead plaintiff timely); *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 207 (E.D.N.Y. 2019) (same); *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 420 (E.D.N.Y. 2018) (same). Two responses were filed to Hawes's motion: one by movants Benjamin Lamontagne, Ever Garcia, and Michael Phillips (together, the "Argo Investor Group" or "AIG"), (Mem. in Opp'n dated Apr. 10, 2023 ("AIG Opp'n"), Dkt. No. 28), and a second by Alex Lacy ("Lacy"). (Resp. to the Competing Mots. dated April 10, 2023 ("Lacy Resp."), Dkt. No. 27). The AIG movants and Lacy had both also filed timely motions for appointment as Lead Plaintiff and appointment of Lead Class Counsel. (Mot. to Appoint Counsel dated Mar. 27, 2023, Dkt. No. 15; Mot. to Appoint Counsel dated Mar. 27, 2023, Dkt. No. 18).

The Court must "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons" that:

(1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s);

(2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and

(3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted "only" by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).  Hawes, the AIG movants, and Lacy each made a timely motion to be appointed Lead Plaintiff.  The Court, therefore, turns to the two remaining elements of the presumption to resolve which of the three may be appointed Lead Plaintiff.

A.  Largest Financial Interest

In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (referring to factors as the "*Olsten* Factors," citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  The fourth factor, the approximate losses suffered, is considered to be the most

important.  *See Atanasio*, 331 F.R.D. at 26; *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

Under these *Olsten* criteria, Hawes has the largest demonstrated financial interest.[4]  Hawes purportedly suffered $631,886.17 in losses, having purchased 178,425 total ADSs, 52,225 net ADSs, and expending a net amount of $102,139.68 during the class period.[5]  (Hawes's Mem. of Law in Supp. of Mot. dated Mar. 27, 2023 ("Hawes Mem."), Dkt. No. 23 at 9; *see also* LIFO Loss Chart ("Hawes Loss Chart"), attached as Ex. A to Decl. of James M. Wilson, Jr. in Further Supp. of Hawes's Mot., Dkt. No. 33 at 1–2).  In contrast, AIG suffered $226,759.01 in losses, based upon a collective purchase of 31,644 ADSs, at a net cost of $241,101.64.  (AIG Mem. at 7; LIFO Loss Chart ("AIG Loss Chart"), attached as Ex. B to Decl. of Adam M. Apton in Supp. of the Argo Investor Group's Mot., Dkt. No. 17 at 3).  And Lacy suffered losses of $143,584.93.  (Lacy Mem. at

---

[4] Each of the three Movants suffered greater losses under the Exchange Act than the Securities Act, and used those Exchange Act losses in arguing they have the largest financial interest.  But the rank order of Movants' Securities Act losses is no different: Hawes's losses are $466,540.95; AIG's losses are $193,822.15; Lacy's losses are $128,034.86.  (Hawes's Reply Mem. of Law in Further Supp. of His Mot. dated Apr. 17, 2023 ("Hawes Reply"), Dkt. No. 32 at 8; Mem. of Law in Supp. of the Argo Investor Group's Mot. dated Mar. 27, 2023 ("AIG Mem."), Dkt. No. 16 at 7; Mem. of Law in Supp. of Lacy's Mot. dated Mar. 27, 2023 ("Lacy Mem."), Dkt. No. 19 at 6).  And while the Court could not ignore any netting of losses that occurred across both types of claims— *Hoang v. ContextLogic, Inc.*, No. 21-CV-3930, 2022 WL 1539533, at *4–*5 (N.D. Cal. May 16, 2022) (rejecting a request that the Court "consider only losses under the Exchange Act, and disregard all losses under the Securities Act, when determining which movants have the greatest financial interest")—here aggregating the losses under both statutes leaves the parties in the same rank order.

[5] Hawes sold common stock of Argo, which he converted to an equivalent number of ADSs based on the conversion ratio of each ADS representing ten shares of Argo. (Hawes Mem. at 9 n.3).  No party has criticized this methodology.

6; Financial Interest Analysis, attached as Ex. C to Decl. of Gregory B. Linkh in Supp. of Lacy's Mot., Dkt. No. 20 at 1).  On all but one measure—net funds expended—Hawes's expenditures or losses are greater than the other two Movants, as the chart below demonstrates.

|  | Total ADSs Purchased | Net ADSs Purchased | Net Funds Expended | Approximate Loss |
|---|---|---|---|---|
| **Hawes** | 178,425 | 52,225 | $102,139.68 | $631,886.17 |
| **AIG** | 31,644 | 14,554 | $241,101.64 | $226,759.01 |
| **Lacy** | 10,292 | 9,788 | $142,980.14 | $143,584.93 |

As a result, the Court concludes he has the largest financial interest.  *See, e.g.*, *Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, No. 22-CV-1014, 2022 WL 1515451, at *3 (S.D.N.Y. May 13, 2022) ("[T]hree of the four *Lax/Olsten* factors weigh in favor of finding ACATIS has the largest financial interest. . . . [T]he Court finds that ACATIS has the largest financial interest in this dispute[.]"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008) ("While the first two factors favor Maa and the third factor favors Bennett, the fourth factor in this case—the most important factor—strongly favors Bennett.  Because Bennett has suffered greater approximate losses, he has the largest financial interest in the relief sought by the Class as determined by the *Lax/Olsten* test.").

AIG raises a bevy of arguments in opposition to the straightforward, data-driven conclusion that Hawes has the largest financial interest.  It argues that Hawes failed to provide a financial analysis to support his claims and that his losses are not as large as he alleges, because of accounting manipulation.  (AIG Opp'n at 8–10).  These arguments

8

all arise from the same core contention: that Hawes has not proven his losses with sufficient certainty.  AIG's position is without merit, both legally and factually.

Nothing in the PSLRA requires that a party provide proof of losses in a particular manner; there is certainly no provision in the statute that requires the "loss analysis" AIG demands.  A putative lead plaintiff need only provide a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period."  15 U.S.C. §§ 77z-1(a)(2)(A)(iv), 78u-4(a)(2)(A)(iv).  So, a court may rely on a party's sworn declaration along with a list of purchases and sales— precisely what Hawes provided.  (Certification of Proposed Lead Pl. dated Mar. 25, 2023 ("Hawes Certification"), attached as Ex. B to Wilson Decl. ¶ 5 ("[Hawes]'s transactions in Argo Blockchain plc securities that are the subject of the complaint during the class period . . . are set forth in the chart attached hereto.").  *See, e.g.*, *Malriat v. QuantumScape Corp.*, No. 3:21-CV-58, 2021 WL 1550454, at *4 (N.D. Cal. Apr. 20, 2021) (rejecting argument that certification of transactions has to be provided in particular form to be accepted).  His certification is hardly a conclusory summary statement of loss, but a detailed list of transaction data from which any opposing party can verify calculations.  (Nor is it remotely accurate to suggest the only way to know Hawes's losses is based on "a sentence" in his opening brief.  (AIG Opp'n at 9)).

None of the cases (many of which are outside of this Circuit) AIG relies on are to the contrary.  In *In re Atlantic Power Corp.*, the Court noted that at least one party failed to "provide specificity regarding its loss amount."  *In re Atl. Power Corp. Sec. Litig.*, No. 13-CV-10537, 2014 WL 12628589, at *1 (D. Mass. Mar. 31, 2014).  A group seeking lead plaintiff status simply asserted, without any support, that it "suffered hundreds of thousands of dollars in collective losses."  (Mem. of Law in Supp. of Mot.

dated May 7, 2013, Dkt. 13-CV-10537, Dkt. No. 21 at 4–5 (D. Mass)).  And that group's

certification had additional facial infirmities.  *In re Atl. Power Corp. Sec. Litig.*, 2014

WL 12628589, at *1 ("The certification submitted on behalf of one of the initially

proposed members of the investor group was misdated, another did not date her

certification and no certification was provided by another proposed group member.").

Those issues are absent here, and Hawes's certification—with its specific transaction

details—stands in stark contrast.[6]

To the extent that there is a requirement to provide additional proof, Hawes met

it.  Hawes submitted a second chart which calculates his losses using the same "LIFO

Methodology" that AIG uses to calculate its losses.  (Hawes Loss Chart; AIG Opp'n at

---

[6] Similarly, the court in *Shupe v. Rocket Companies, Inc.* denied one movant's motion for failure to state "the number of shares it purchased, its net shares purchased, or its net funds expended."  601 F. Supp. 3d 214, 219–20 (E.D. Mich. 2022).  That is not an issue with Hawes's motion—those facts are easily calculated based on Hawes's initial chart, (Hawes Certification at 2–4), and his counsel provides the calculated figures in his memo of law.  *Compare* (Hawes Mem. at 9), *with Shupe*, 601 F. Supp. 3d at 220 n.2 ("[T]he Elwell/Tragresser Group has provided no explanation of how to read those documents or the relevant values to be derived from them.").  The same problems inure to AIG's citation of *Cambridge Retirement System v. Mednax, Inc.* and *In re Comdisco Securities Litigation*, (AIG Opp'n at 3, 9), which criticized vague or incomplete submissions that made it difficult for a court to determine the values for the *Olsten* factors.  *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-CV-61572, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, 2018 WL 6978626, at *1 (Dec. 21, 2018); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945–46 (N.D. Ill. 2001).  Hawes's initial submission—and his reply submission—do not have such defects.  Meanwhile, the courts in *Born v. Quad/Graphics, Inc.* and *Perlmutter v. Intuitive Surgical, Inc.* expressed concern with movants who had been "net sellers" during the class period and thus could have profited from the defendants' fraud and not suffered losses.  *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-3451, 2011 WL 566814, at *8 (N.D. Cal. Feb. 15, 2011).  Unlike those movants, Hawes was neither a net seller nor a net gainer, and his chart—prepared in the same fashion that AIG did— demonstrates losses, not profits.  (*Compare* Hawes Loss Chart, *with* AIG Loss Chart).

6).[7] "Recently, courts have preferred LIFO . . . . The main advantage of LIFO is that . . . it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price[.]" *Atanasio*, 331 F.R.D. at 27 n.5 (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005)). And this chart confirms the calculations of losses he first submitted, and confirms that his losses are greater than AIG's. This puts to rest AIG's argument that Hawes used an improper methodology, (AIG Opp'n at 7–8), or that his losses are inflated as a result of the use of such methodology. (*Id.* at 9).[8]

All that AIG can muster in response is the suggestion that the law required Hawes to come forward with his proof "in the first instance." (AIG Opp'n at 10). But as with all of its legal arguments, this argument is baseless. As an initial matter, the argument makes no sense. No adjudication took place between the filing of the competing motions for Lead Plaintiff certification and Hawes's reply brief; nothing in the case was decided, and no party was prejudiced. The purpose of the reply brief is to respond to arguments raised in opposition. That was precisely what Hawes did. No waiver or similar principle exists in this context, and absent any prejudice or harm—and

---

[7] "LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale. The alternative, 'first in, first out' ('FIFO'), assumes that the first stocks to be sold are the stocks that were acquired first." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011).

[8] In Reply, AIG argues that Hawes "may have profited from the fraud" and he is "hiding windfall gains that should offset his Class Period loss." (The Argo Investor Group's Mem. of Law in Reply dated Apr. 17, 2023 ("AIG Reply"), Dkt. No. 31 at 4). However, Hawes includes a list of his pre-class purchases of Argo common stock with his loss chart, (Hawes Loss Chart at 3–4), and both Hawes and AIG chose not to include losses "from pre-Class Period [common stock] shares" in the Summary of Financial Interest that each submitted. (*See id.* at 4; AIG Loss Chart at 3). In other words, there is no evidence of windfall gains; nor can any inference be drawn from the chart provided by Hawes, which is in the same format as that provided by AIG.

given the lack of any PSLRA requirement of particular form of evidence—such a "first instance" rule would make no sense.  Moreover, there was no change in position from the first filing and Hawes's second filing: his losses and calculations remained the same.

AIG filed a reply to Hawes's response without court permission, to bring forward legal authority that allegedly supports its position.  It does not.[9]  AIG asserts that "loss calculation analys[is] [is only] timely with opening motion papers instead of subsequent filings." (Notice of Suppl. Authority dated June 7, 2023, Dkt. No. 34 at 1).  *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.* says no such thing.[10]  There, the

---

[9] AIG attempts to argue that because necessary information was only provided by Hawes in reply, it is after the 60-day PSLRA deadline.  (*See* AIG Reply at 5 n.1).  The argument makes much of nothing.  The deadline is to file the motion, not to submit all evidence, argument, or support for the motion.  And the cases relied upon by AIG are wildly inapposite.  *Bazuaye v. I.N.S.* is an immigration case standing for the generic proposition that arguments made for the first time in reply are waived.  *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996).  *Plymouth County* is similar: a reply declaration's propriety on a reconsideration motion.  *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, No. 21-CV-4390, 2021 WL 5051649, at *3 (S.D.N.Y. Nov. 1, 2021).  This is neither an immigration case nor one on appeal or reconsideration.  And given the nature of the Lead Plaintiff motion process—without a pre-existing appellate or other record—a reply brief is the only occasion to respond to arguments made by the parties who also seek certification (since the opening brief is filed without any knowledge of who the other movants are and therefore cannot preordain their arguments).  So general principles of waiver do not apply.  As for *In re Boeing Co.*, the only securities case cited, AIG takes it out of context.  The issue with one group of movants was not the detail of losses or calculation methods, but their financial experience and wherewithal.  *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-CV-2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) ("[M]ost movants—and particularly individual investors—embrace the opportunity to advise the Court about their financial sophistication, experience, and ability to effectively manage and direct the activities of class counsel.  The Wangs, by contrast, provided no such information." (internal citations omitted)).  Hawes has not been challenged in this regard; the case has no application here.

[10] AIG also cites a bevy of cases throughout it briefs suggesting that the Court must "calculate" the Lead Plaintiff's financial interest.  (*See* AIG Opp'n at 8–9; AIG Reply at 3).  AIG's argument is a sleight-of-hand—when it uses the word "calculate" it is arguing that the Court must replicate the movant's LIFO calculations or conduct its own LIFO calculations.  But no case says anything of the sort.  A court may rely on a movant's LIFO calculations and need not conduct its own.  *E.g.*, *Twitchell v. Enovix*

Court concluded it was "gamesmanship" for one movant—having lost to another using one methodology—to switch mid-stream to another method to prevail.  No. 23-CV-6339, 2023 WL 3750115, at *5 (S.D.N.Y. June 1, 2023) ("While the Miami and Louisiana Sheriffs group now advocates for identifying the presumptively most adequate plaintiff based on each movant's recoverable loss, it has only taken this position after being presented with Birmingham, El Paso, and Wayne County's motion.").  Hawes never switched methodology or took steps to increase his losses in response to AIG's statement of loss.  Hawes calculated losses using a LIFO method and stated as such in both his initial and reply papers.  The calculations in both sets of papers are identical.  (*Compare* Hawes Mem. at 9 ("Movant . . . suffered LIFO losses of $631,886.17[.]"), *with* Hawes Reply at 1 ("[L]osses suffered of $631,886.17 [were] calculated using the well accepted Last-In-First-Out ('LIFO') accounting method.")).[11]  AIG's arguments are, therefore, without merit.

---

*Corp.*, No. 23-CV-71, 2023 WL 3170044, at *9 (N.D. Cal. Apr. 28, 2023) ("The Court will thus utilize the LIFO calculations the movants presented in their opening briefs."); *In re Evolus Inc. Sec. Litig.*, No. 20-CV-8647, 2021 WL 4251957, at *8 (S.D.N.Y. Sept. 17, 2021) ("The Court accepts Ahmad's calculation of his losses, and concludes that . . . he has alleged the greatest loss and the largest financial interest among the movants.").  In using the word "calculate" these cases stand for the unremarkable proposition that the court determine a movant's losses.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii) ("[T]he most adequate plaintiff . . . is the person or group of persons that . . . *in the determination of the court*, has the largest financial interest in the relief sought by the class[.]" (emphasis added)); 15 U.S.C. § 78u-4(a)(3)(B)(iii) (same).

[11] If anything, it is AIG that is the shifting target.  Its opposition brief argues that Hawes failed to provide any support for his calculations and assumes that Hawes used a FIFO methodology.  (AIG Opp'n at 2 ("[H]e fails to substantiate this claim with any analysis whatsoever[.]"); *id*. at 3 ("[His] unwillingness to disclose any loss calculation for the Court to rely on renders his true financial interest here murky at best." (emphasis removed))).  In reply, AIG continues to insist that Hawes provided no "loss analysis." (AIG Reply at 3–4).  But, with his own reply, Hawes provided the information in a chart of the same type and format as AIG itself.  (*Compare* AIG Loss Chart, *with* Hawes Loss Chart).  When provided with Hawes's analysis, AIG shifts to saying that the Loss Chart

Lacy for his part concedes that Hawes has the largest financial interest.  (Lacy Resp. at 4).  The Court therefore concludes that Hawes has the largest financial interest in relief sought by the class.

B.  Rule 23

The next step in identifying which plaintiff is entitled to the presumption is to determine whether a movant "otherwise satisfies the requirements of Rule 23." *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122, 2019 WL 6873807, at *3 (S.D.N.Y. Dec. 17, 2019) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)).  In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two of Rule 23's requirements—typicality and adequacy—are satisfied.  *See Ford*, 2015 WL 4393798, at *3 (adopting report and recommendation) (collecting cases); *see also Atanasio*, 331 F.R.D. at 29–30; *Martingano v. Am. Int'l Grp., Inc.*, No. 06-CV-1625, 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied." (quotations and citations omitted)).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability."  *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006) (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).  The claims here are all based on the alleged misrepresentations and omissions in the Offering Documents and subsequent press releases issued during the class period.

---

was submitted too late.  (Notice of Suppl. Authority dated June 7, 2023, Dkt. No. 34 at 1).

And all class members are alleged to have relied on these statements and omissions. (Compl. ¶¶ 77–79, 92–93). *E.g., X Fin.*, 2020 WL 2478643, at *4 ("The claims here are all based on the alleged falsity of the IPO Registration Statement, evidenced by the statements in various press releases and conference calls."); *Dixon v. Bemis Co., Inc.*, No. 19-CV-3356, 2020 WL 7212082, at *3 (S.D.N.Y. Mar. 10, 2020) ("Dixon contends that 'Defendants are alleged to have solicited all Bemis' shareholders' votes with the same materially incomplete and misleading Proxy Statement that caused Movant's injuries.' This Court is satisfied that . . . Dixon has made the preliminary showing required for typicality[.]" (internal citations omitted)); *City of Warren Police v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 316 (E.D.N.Y. 2018) (Exchange Act claims arising out of alleged false statements in press releases and conference calls).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *In re Symbol Techs.*, 2006 WL 1120619, at *3 (quoting *In re eSpeed*, 232 F.R.D. at 102); *Atanasio*, 331 F.R.D. at 29; *City of Warren*, 325 F. Supp. 3d at 316.

Hawes is represented by Faruqi & Faruqi, LLP, a firm that has litigated class actions in the past; the Court concludes the firm would generally be able to conduct this litigation. (*See* Firm Resume of Faruqi & Faruqi, attached as Ex. D to Wilson Decl.). Nothing about Hawes's interests appears antagonistic to the interests of the other putative class members; this appears to be a fairly common class action based on alleged violations of the Securities Act and the Exchange Act where class members are relying on the same statements or omissions as the factual basis of their claims. *E.g., X Fin.*,

15

2020 WL 2478643, at *4; *City of Warren*, 325 F. Supp. 3d at 316–17 (Exchange Act claims arising out of alleged false statements in press releases and conference calls); *In re Sequans Commc'ns*, 289 F. Supp. 3d at 423; *see also In re Bank of Am. Corp. Sec.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that in an action based on an allegedly misleading proxy statement, "[t]he Public Pension Funds also satisfy the adequacy requirement, as they have the greatest financial interest in the outcome of the case, their interests appear to be otherwise aligned with those of the putative class, and they have retained competent and experienced counsel").  Finally, as noted earlier, Hawes has suffered alleged losses of $631,886.17 and thus has a sufficient financial interest in the case's outcome to suggest he will pursue the case with vigor.

The presumption that Hawes should be appointed Lead Plaintiff "may be rebutted only upon proof" that Hawes "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render [him] incapable of adequately representing the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II); *accord Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004).  AIG essentially repeats the same arguments as before—that Hawes has not demonstrated his losses—to argue that Hawes could not adequately represent the class and that he has not made the threshold Rule 23 showing.  (AIG Reply at 4–5).  AIG's arguments about the insufficiency of Hawes's proof, as explained above, are without merit.  They certainly do not suggest that Hawes could not fairly and adequately protect class members' interests or that he is subject to unique defenses inapplicable to others.

And again, the case cited and relied upon by AIG is inapposite.  In *Perez v. HEXO Corp.*, the court expressed skepticism that the movant with the largest financial interest

16

possessed the requisite sophistication to serve as lead plaintiff.  No. 19-CV-10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) ("[G]iven Wong's failure to provide *any* information regarding his experience in his preliminary motion, the Court questions whether Wong will meaningfully oversee and control the prosecution of this consolidated class action.").  In contrast, Hawes provided a detailed declaration with his initial motion papers that includes information about Hawes's background and business experience, and AIG provides no grounds to doubt those qualifications.  (Decl. of Richard Hawes in Supp. of His Mot. dated Mar. 25, 2023, attached as Ex. C to Wilson Decl.).

AIG's arguments are therefore without merit.  As for Lacy, he simply argues that Hawes's decision to question "Lacy's adequacy is a tacit admission that Hawes doubts his own adequacy to represent the class."  (Lacy's Reply Mem. of Law in Further Supp. of His Mot. dated Apr. 17, 2023, Dkt. No. 30 at 2).  This is not proof that Hawes will not adequately protect the interests of the class.

The Court therefore concludes that the presumption has not been rebutted, and Hawes is appointed Lead Plaintiff.  *See, e.g.*, *In re Gentiva Sec. Litig.*, 281 F.R.D. at 121 ("[B]ecause there is no indication that LACERS is subject to unique defenses or will be unable to fairly and adequately protect the interests of the class th[e] presumption is not rebutted.  Therefore, the motion by LACERS to be appointed lead plaintiff is granted." (internal citations omitted)).

II.     Lead Class Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v); *see Vale S.A.*, 378 F. Supp. 3d at 211; *In re Sequans*

*Commc'ns*, 289 F. Supp. 3d at 426. "The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Bray v. Frontier Commc'ns Corp.*, No. 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018) (quotations omitted); *see Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The [PSLRA] . . . evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quotations omitted)).

The Court sees no reason to not adhere to Hawes's choice. Faruqi & Faruqi, LLP is appointed Lead Class Counsel.

CONCLUSION

For the reasons stated, the Court appoints Richard Hawes as Lead Plaintiff and Faruqi & Faruqi, LLP as Lead Class Counsel. The motions for appointment as Lead Plaintiff and appointment of Lead Class Counsel filed by Benjamin Lamontagne, Ever Garcia, and Michael Phillips, and Alex Lacy are denied. The motions for appointment as Lead Plaintiff and appointment of Lead Class Counsel filed by Brian Begay and Mohit Mohindru are denied as moot.

SO ORDERED.

/s/*Sanket J. Bulsara* July 19, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York