**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AARON MURPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　-against-<br><br>ARGO BLOCKCHAIN, PLC, PETER WALL, ALEX APPLETON, MATTHEW SHAW, SARAH GOW, COLLEEN SULLIVAN, and MARIA PERRELLA,<br><br>　　　　　　Defendants. | Case No. 1:23-cv-07305-CM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**MCDERMOTT WILL & EMERY LLP**

Joel C. Haims
Michael R. Huttenlocher
Kierstin S. Fowler
Christopher J. Whalen
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
jhaims@mwe.com
mhuttenlocher@mwe.com
ksfowler@mwe.com
chwhalen@mwe.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF RELEVANT FACTS ............................................................................2

      A.     Parties..............................................................................................................2

      B.     The Argo IPO and Offering Materials ...........................................................3

      C.     Argo's Post-IPO Disclosures .........................................................................3

      D.     The Amended Complaint.................................................................................4

             1.     Securities Act Claims..........................................................................4

             2.     Exchange Act Claims..........................................................................5

ARGUMENT ..........................................................................................................................5

I.      PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM. ....................................5

      A.     Plaintiffs Fail to Sufficiently Allege Statements to Be False .....................5

      B.     Plaintiffs Improperly Rely Upon Protected Forward Looking Statements.......................................................................................................7

      C.     Plaintiffs Improperly Rely Upon Inactionable Puffery Statements .............9

II.     PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM. ...................................9

III.    PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM.............................10

      A.     Plaintiffs Plead No Actionable Misstatements ..........................................10

             1.     Plaintiffs Fail to Sufficiently Allege Statements to Be False ...........10

             2.     Plaintiffs Improperly Rely Upon Protected Forward Looking Statements .........................................................................................12

             3.     Plaintiffs Improperly Rely Upon Puffery or Statements of Opinion .............................................................................................14

      B.     Plaintiffs Plead No Facts Giving Rise to a Strong Inference of Scienter ......................................................................................................16

             1.     Plaintiffs Fail to Allege "Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness." ......................................16

                   i.     Plaintiffs fail to identify contradictory reports or statements concerning the Fixed-Price PPA .................................17

                   ii.    Plaintiffs fail to identify contradictory reports or statements concerning Argo's finances .........................................19

              2.     Plaintiffs' Remaining Boilerplate Scienter Allegations as to the Exchange Act Defendants Fail...............................................21

                   i.     "Core operations" Theory ................................................21

i

          ii.      Executive Departures ...................................................................22

          iii.     Defendants' SOX Certification.......................................................22

     3.     Plaintiffs Fail to Allege Corporate Scienter..............................................23

     4.     Plaintiffs' Poorly Disguised "Fraud by Hindsight" Theory is Outweighed By the More Compelling Non-culpable Inferences ........................................................................................23

IV.     PLAINTIFFS FAIL TO STATE A SECTION 20(A) CLAIM. ........................................24

CONCLUSION.......................................................................................................................25

ii

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Alaska Laborers Emps. Ret. Fund v. Scholastic Corp.*,
  No. 07 CV 7402 (GBD), 2011 WL 3427208 (S.D.N.Y. Aug. 3, 2011) ...................................16

*Altayyar v. Etsy, Inc.*,
  242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018).........................15

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008)....................................................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)....................................................................................................24

*Born v. Quad/Graphics, Inc.*,
  521 F. Supp. 3d 469 (S.D.N.Y. 2021)..........................................................................11, 12, 24

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings plc*, No. 18-CV-10330 (JPO), 2020 WL 2834857 (S.D.N.Y. June 1, 2020).................................................................................................................22

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..............................................................................................9, 14

*City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*,
  No. 17 CIV. 3501 (JFK), 2019 WL 452051 (S.D.N.Y. Feb. 5, 2019)....................................14

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018)...................................................................................23

*In re eSpeed, Inc. Sec. Litig.*,
  457 F. Supp. 2d 266 (S.D.N.Y. 2006)...................................................................................22

*In re Garrett Motion Inc. Sec. Litig.*,
  No. 1:20-CV-07992 (JLR), 2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023)............................14

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................................21

*Gross v. AT&T Inc.*,
  No. 19-CV-2892 (VEC), 2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021)..................................6

*In re HEXO Corp. Sec. Litig.*,
  524 F.Supp.3d 283 (S.D.N.Y. Mar. 8, 2021)........................................................................6, 9

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).................................................................................................16

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   No. 07 CIV. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)..................................9

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021)....................................................................................15

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).................................................................................................10

*Lin v. Interactive Brokers Grp., Inc.*,
   574 F. Supp. 2d 408 (S.D.N.Y. 2008)......................................................................... 5, 7-8

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd sub nom. Loc. No. 38 Int'l Bhd. of
   Elec. Workers Pension Fund v. Am. Express Co.*, 430 F. App'x 63 (2d Cir.
   2011) ....................................................................................................................................18

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)....................10, 11

*Medina v. Tremor Video, Inc.*,
   No. 13-CV-8364 PAC, 2015 WL 1000011 (S.D.N.Y. Mar. 5, 2015), *aff'd,* 640
   F. App'x 45 (2d Cir. 2016).....................................................................................................8

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).................................................................................................16

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018)...................................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..............................................................................................................15

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009) .......................6

*Ramzan v. GDS Holdings Ltd.*,
   No. 19-CV-9154 (LAK), 2020 WL 1689772 (S.D.N.Y. 2020).........................................20, 23

*Schiro v. Cemex, S.A.B. de C.V.*,
   396 F. Supp. 3d 283 (S.D.N.Y. 2019)...................................................................................23

*In re Seadrill Ltd. Sec. Litig.*,
   No. 14 CIV. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016) ...............................15

*In re Skechers USA, Inc. Sec. Litig.*,
   444 F. Supp. 3d 498 (S.D.N.Y. 2020 (emphasis added)) ......................................................20

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010)........................................................................................13

*Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*,
    412 F. Supp. 3d 353 (S.D.N.Y. 2019), *aff'd*, 826 F. App'x 111 (2d Cir. 2020)......................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................16, 24

*Tung v. Bristol-Myers Squibb Co.*,
    412 F. Supp. 3d 453 (S.D.N.Y. 2019).................................................................22

**Statutes**

15 U.S.C. § 77k(a) ...................................................................................................6

15 U.S.C. § 77o.......................................................................................................9

15 U.S.C. § 78U-5(c)(1)(A)(i) ..................................................................................8

**PRELIMINARY STATEMENT**

Defendant Argo Blockchain, plc ("Argo") is a publicly traded U.K.-based cryptocurrency mining company.  Plaintiffs allege that they bought Argo's American Depositary Receipts in the initial public offering ("IPO") and in the aftermarket.  The crux of Plaintiffs' Sections 11 and 10(b) claims is that Defendants made false and misleading statements that Argo was insulated from volatility of cryptocurrency values and energy costs.  But Defendants never assured investors that Argo could weather severe adverse market conditions for cryptocurrency miners. In fact, quite the contrary—Defendants provided investors with extensive disclosures in the IPO documents and afterwards about the riskiness of Argo's cryptocurrency mining business and its susceptibility to cryptocurrency and energy price fluctuations, even though those risks were plainly obvious to rational investors.  When the market turned against cryptocurrency miners, including Argo, Plaintiffs concocted this "fraud by hindsight" case to recover investment losses.

Plaintiffs' Section 11 claim is predicated upon a handful of alleged misstatements and omissions in the IPO Registration Statement "regarding the Company's liquidity (or lack thereof), working capital and ability to finance operations."  (Amended Complaint, dated September 26, 2023 (ECF No. 45), (the "AC") ¶ 67.)  But, as detailed below, none of these statements support a Section 11 claim because either they (i) are not sufficiently alleged to have been false at the time they were made, (ii) are forward looking and accompanied by appropriate cautionary language, or (iii) are no more than classic "puffery."

Plaintiffs' ill-fated Section 10(b) claim fares no better. Plaintiffs point to similar post-IPO disclosures and public statements as the basis for their Section 10(b) claim, but the Section 10(b) claim fails for the same reasons.  In addition, Plaintiffs' allegations that Defendants acted with scienter fall woefully short.  Plaintiffs fail to allege *any* stock sales or corporation transactions entered into by Defendants that would give rise to a strong inference of scienter.  Instead, Plaintiffs

1

cobble together their scienter allegations based upon circumstantial evidence, including the resignations of Argo's CEO and CFO months after the end of the class period. However, Plaintiffs' allegations do not clear the high burden required to allege a plausible, strong inference of scienter.

Plaintiffs' allegations fail to plausibly allege Securities Act or Exchange Act claims against Defendants and, for the reasons stated herein, the Amended Complaint should be dismissed.

**STATEMENT OF RELEVANT FACTS**

**A.      Parties**

Argo is incorporated and headquartered in the United Kingdom.  (AC ¶ 23.)  Argo is a blockchain technology company focused on large-scale mining of Bitcoin and other cryptocurrencies.  (*Id.*)  Argo uses "purpose-built computers . . . to solve complex cryptographic algorithms . . . in the blockchain in exchange for rewards and fees denominated in the native [cryptocurrency] of that blockchain network."  (Registration Statement, ("RS") at 1.)

From May 2022 through December 2022, Argo operated a mining facility in Dickens County, Texas called the "Helios Facility."  (AC ¶¶ 99-100, 183.)  Argo sold the Helios Facility to Galaxy Digital LP ("Galaxy"), after the end of the class period, on December 29, 2022.  (*Id.* ¶ 183.)  Argo also operates two mining facilities in Quebec, Canada.  (*Id.* ¶ 60.)

Argo's ordinary shares trade on the London Stock Exchange and on the U.S.-based over-the-counter exchange.  (*Id.* ¶ 43.)  On September 23, 2021, Argo conducted an IPO in the U.S. of American Depositary Receipts ("ADRs") and listed the ADRs for trading on NASDAQ.  (*Id.* ¶ 66.)  Only the ADRs are at issue in the Amended Complaint.  (*Id.* ¶ 22.)

Defendants Peter Wall, Alex Appleton, Sarah Gow, Matthew Shaw, Colleen Sullivan, and Maria Perella (collectively, and together with Argo, the "Securities Act Defendants") all are alleged to have signed the IPO Registration Statement.  (*Id.* ¶¶ 24-29.)  Defendants Wall and

2

Appleton (collectively, and together with Argo, the "Exchange Act Defendants") were Argo's

CEO (until February 2023) and CFO (until December 2022), respectively. (*Id.*)

B.    **The Argo IPO and Offering Materials**

Argo's IPO Registration Statement was declared effective by the U.S. Securities and

Exchange Commission ("SEC") on September 22, 2021. (*Id.* ¶ 64.) The Registration Statement

devotes about 50 pages disclosing the "highly speculative" nature and "high degree of risk"

inherent in Argo's business and its ADRs. (RS at 13-63.)

For example, the Registration Statement warned investors that "the volatile nature of

[Argo's] business and the cryptocurrency industry make it difficult to evaluate [its] current

business and . . . future prospects." (RS at 13.) The Registration Statement explained that "future

prospects are difficult to evaluate" due to a number of factors, including "access to cost-effective

sources of electrical power" and "the highly volatile nature of the blockchain ecosystem." (RS at

14-15.) The Registration Statement also warned investors that Argo "may not be able to secure

access to electricity on a sufficiently firm and unrestricted basis or at a price [it is] willing to pay,"

and that Argo "may be affected by price fluctuations in the wholesale and retail power markets."

(RS at 36-38.) The Registration Statement also contains a "Special Note Regarding Forward-

Looking Statements," explicitly warning, among other things, that statements using words such as

"believe," "expect," and "may" are "inherently uncertain and investors are cautioned not to unduly

rely upon these statements." (RS at 64.)

C.    **Argo's Post-IPO Disclosures**

After its IPO, Argo continued to warn investors, among other things, that its fortunes are

subject to the volatility of both digital asset prices and energy prices. In late 2021, for example,

Argo disclosed that it "didn't have the same kind of huge amounts of cash in the bank that some

of [its] peers had" (Declaration of Joel C. Haims dated November 22, 2023 ("Haims Decl."), Ex.

3

1, p. 25); *see also* AC ¶ 224) and that it would be "probably less profitable in 2022 than it has been in 2021" (CNBC Interview (Dec. 21, 2021); AC ¶ 133). Argo also disclosed in its 2021 Form 20-F, filed with the SEC on May 2, 2022, that the Company's "operating results have fluctuated and may continue to fluctuate significantly due to the highly volatile nature of digital assets" and that it "may be affected by price fluctuations in the wholesale and retail power markets." (2021 Form 20-F at 11, 37; AC ¶ 139 (referencing 2021 Form 20-F).)

Argo also continued to explain to investors that its "forward-looking statements address matters that involve risks and uncertainties" and "are not guarantees of future performance." (Argo Press Release (July 7, 2022); 2022 Form 6-K.) Argo referred investors to the "Risk Factors" in the Registration Statement "for a more complete discussion of factors that could cause [Argo's] actual results to differ from" the Company's forward-looking statements. (*Id.*) Argo explained that "statements which include the words, [inter alia,] 'expects,'… 'believes,' … 'anticipates'…'future,' …'opportunities,' or 'potential'…identify forward-looking statements." (2022 Form 6-K.)

**D.     The Amended Complaint**

**1.     Securities Act Claims**

Plaintiffs allege that the Registration Statement was materially false and misleading because it failed to disclose "prior to and at the time of the IPO" that Argo:

> (i) could not "control and manage the volatility in cryptocurrency pricing", (ii) did not have sufficient liquidity and capital resources beyond 12 months [and was] not sufficiently capitalized, (iii) had far too little cash on hand to operate the Helios facility without taking drastic cost-cutting measures and capital raises . . . and (iv) was not able to withstand foreseeable setbacks inherent to any cryptocurrency mining operation, such as higher energy prices and the decrease in the price of Bitcoin.

(AC ¶ 76.) The specific statements in the Registration Statement alleged to be materially false and misleading as the basis of the Securities Act claims are identified in the chart attached hereto as

4

**Appendix A**, which is incorporated by reference herein.  Any citation herein to a bolded "A" and number (*e.g.*, **A3**) corresponds to the numbered entry in Appendix A.

### 2.    Exchange Act Claims

Plaintiffs allege that the Exchange Act Defendants "continuously" made purported false and misleading statements after the IPO.  (*Id*. ¶ 129.)  Generally, the Exchange Act Defendants allegedly made materially false and/or misleading statements about Argo's ability to weather a decline in the price of Bitcoin and a rise in the cost of electricity.  (*Id.* ¶¶ 129-46.)  The specific statements alleged in the AC to be materially false and misleading as the basis of the Exchange Act claims are identified in the chart attached hereto as **Appendix B**, which is incorporated by reference herein.  Any citation herein to a bolded "B" and number (*e.g.*, **B3**) corresponds to the numbered entry in Appendix B.

**ARGUMENT**

## I.    PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM.

Plaintiffs allege that six (6) statements (*i.e.*, **A1** through **A6**) made in the Registration Statement were materially false and misleading.  (*See* AC ¶¶ 69-75.)  As detailed below, none of these statements can support a Securities Act claim because they either (A) are not sufficiently alleged to be false, (B) are protected forward looking statements and sufficiently disclosed known risks, or (C) constitute puffery.

### A.    Plaintiffs Fail to Sufficiently Allege Statements to Be False

"To be actionable under Section 11, the registration statement must contain an untruth or material omission 'when such part became effective.'" *Lin v. Interactive Brokers Grp., Inc.,* 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008).  Here, Plaintiffs' allegations with respect to statement **A3**-**A6** are classic "hindsight pleading" and must be dismissed because they rely on statements or events that occurred after the effective date of the Registration Statement.  But, "an earlier

5

statement is not somehow made misleading simply because it failed to foretell a defect problem which later materialized." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009); *see also In re HEXO Corp. Sec. Litig.*, 524 F.Supp.3d 283, 301 (S.D.N.Y. Mar. 8, 2021) (dismissing Section 11 claim "based on hindsight pleading"). The Court should dismiss claims based upon these statements because Plaintiffs "do[] not allege facts from which the Court can reasonably infer that the statements were false at the time they were made." *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2021 WL 9803956, at *3 (S.D.N.Y. Sept. 27, 2021).

The portions of statements **A3** through **A6** alleged to be false and misleading are as follows: (i) Argo is "investing heavily in purchasing, building and operating [its] mining facilities" **A3** (AC ¶ 71); (ii) Argo has "financed [its] operations primarily through cash generated by sales of cryptocurrency and sales of equity securities" **A4** (*id.* ¶ 73); (iii) Argo's "primary sources of liquidity are [its] cash and cash equivalents and cryptocurrency held in treasury" **A4** (*id*); (iv) "[t]o control and manage the volatility in cryptocurrency pricing, [Argo] engage[s] in planned selling of cryptocurrency over an extended period in advance of forecasted fiat cash requirements" **A5** (*id.* ¶ 74); and (v) Argo's "investments in mining facilities are designed to significantly expand [its] mining capacity" **A6** (*id.* ¶ 75).

Plaintiffs have not alleged any facts indicating that these statements were false "when [the Registration Statement] became effective." 15 U.S.C. § 77k(a). Rather, Plaintiffs rely upon a series of statements made *after September 22, 2021* to support their allegations that above statements were materially false and misleading when made. For example, Plaintiffs point to (i) an October 7, 2022 announcement by Argo of "drastic strategic actions to 'strengthen the Company's balance sheet" (*id* ¶ 79), (ii) an October 7, 2022 report issued by Barclays about Argo's supposed

deteriorating financial condition (the "Barclays Report") (*id.* ¶ 78), and (iii) a statement from CW-1 that "***after the IPO***, CW-1 had concerns about the financial status of [Argo]" when machines were not being timely deployed (*id.* ¶ 72 (emphasis added)).  These post-Registration Statement events have no impact on whether the statements made in the Registration Statement concerning the strength of Argo's financial condition were true or false *at the time of the IPO*.  Importantly, as Plaintiffs acknowledge in the AC, "[i]n 2021, Bitcoin had a record year" and "by November 2021, a single bitcoin reached the record price of nearly $69,000."  (*Id.* ¶ 54.)  But, the price of Bitcoin dropped dramatically in 2022 and, as Plaintiffs acknowledge, Argo announced strategic actions were "***all due in part to*** 'the decline in the price of Bitcoin since March 2022," and "increased mining difficulty" from unexpectedly high energy prices, all of which *post-dated* the effective date of the Registration Statement.  (*Id.* ¶ 77 (emphasis added).)

Plaintiffs also acknowledge that CW-1's concerns about Argo were only "after the IPO," not at the time of the IPO.  Plaintiffs also do not provide sufficient information to support the probability that CW-1 has any relevant information about Argo's finances, at the time of the IPO or otherwise. (*Id.* ¶ 72 (alleging only that CW-1 "had concerns about the financial status" of Argo because "a shipment of machines was received and sat in the warehouse without being deployed.").  The same is true for the Barclays Report.  (*Id.* ¶ 78 (alleging that Barclays was "*awaiting clarity on [Argo's] ongoing financial and operational headwinds*") (emphasis added).)

### B.    Plaintiffs Improperly Rely Upon Protected Forward Looking Statements

Plaintiffs also fail to plausibly allege that statements **A1** through **A5** are false and misleading because, as discussed herein and in Appendix A, each statement is a forward looking statement and accompanied by risk disclosure language that serves as "sufficient warnings" to an investor to "'render[ ] the alleged omissions or misrepresentations immaterial as a matter of law'." *Lin*, 574 F. Supp. 2d at 417 (quoting *Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*,

114 F. Supp. 2d 316, 326 (D.N.J. 2000)).  In addition, the PSLRA shields from liability statements that are, as here, "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially."  15 U.S.C. § 78U-5(c)(1)(A)(i).

As set forth in full in Appendix A, statements **A1** through **A5** all contain linguistic cues such as "we believe" or "we expect" that indicate that the statements are forward looking.  *See Medina v. Tremor Video, Inc.*, No. 13-CV-8364 PAC, 2015 WL 1000011, at *3 (S.D.N.Y. Mar. 5, 2015), *aff'd,* 640 F. App'x 45 (2d Cir. 2016).  (*See* App'x. A, **A1** ("**We believe** the combination of increased mining…"), **A2** ("**We aim** to optimize…"), **A3** ("**We expect** to have greater control…"), **A4** ("**We believe** that our sources of liquidity and capital resources…"), **A5** ("**We expect** to sell Bitcoin…") (emphasis added).)

Further, and as detailed in Appendix A, each of the alleged misstatements is paired with additional statements disclosing the very risk that the Plaintiffs allege was withheld from investors. Each alleged misstatement disclosure pair is laid out in Appendix A.  For example, Plaintiffs allege that the Argo's "planned selling of cryptocurrency" to "control and manage the volatility in cryptocurrency pricing" was false and misleading.  (AC ¶ 74; **A5**.)  However, Defendants also disclosed in the Registration Statement that Argo's "*operating results have fluctuated and may continue to fluctuate significantly due to the highly volatile nature of digital assets*." (RS at 14-15 (emphasis in original).)  Additionally, Plaintiffs claim that Argo misled investors about its ability to withstand fluctuations in energy prices because of its "owning and operating [its] mining machines at facilities that offer competitive advantages, including access to reliable, low-cost renewable power and room for expansion."  (AC ¶ 71; **A3**).  But, Argo contemporaneously and specifically warned investors that it "may not be able to secure access to electricity on a sufficiently

8

firm and unrestricted basis or at a price [it is] willing to pay," and that it "may be affected by price fluctuations in the wholesale and retail power markets." (RS at 36-38.)

### C.       Plaintiffs Improperly Rely Upon Inactionable Puffery Statements

Plaintiffs' allegations also fail because statements **A1** through **A5** are statements of general corporate optimism, or statements not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome[.]" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183, 185 (2d Cir. 2014).

As set forth in full in Appendix A, statements **A1** through **A5** all incorporate qualifiers, such as "we believe" and "we expect," that indicate that a statement is puffery because "[s]uch language, at a minimum, signals to prospective investors that the predictions of the Company may not come to fruition." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 CIV. 0976 (LAP), 2008 WL 4449280, at *13 (S.D.N.Y. Sept. 30, 2008). (*See* App'x, **A1** ("**We believe** the combination of increased mining…"), **A2** ("**We aim** to optimize our mining…), **A3** ("**[W]e expect** to have greater control…"), **A4** ("**We believe** that our sources of liquidity and capital resources…"), **A5** ("**We expect** to sell…"). Thus, the language in statements **A1** through **A5** indicate clearly that these statements are puffery. *See Ladmen*, 2008 WL 4449280, at *13 (statements that are "expressions of corporate optimism couched in subjective terms of belief, expectation, and intention[,]" are not actionable).

## II.      PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM.

A claim for control person liability under Section 15 of the Securities Act requires a showing of a primary violation of Section 11 by the controlled person. 15. U.S.C. § 77o. The AC does not state a cause of action under Section 15 because Plaintiffs have failed to allege a viable Section 11 claim against the Securities Act Defendants. *See HEXO*, 524 F. Supp. 3d at 305.

### III.    PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM

Plaintiffs' Section 10(b) claim should be dismissed because Plaintiffs have not adequately plead two essential elements, that: (1) the Exchange Act Defendants made an actionable misstatement or omission, and (2) the Exchange Act Defendants acted with scienter.  *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).

#### A.    Plaintiffs Plead No Actionable Misstatements

Plaintiffs allege that twenty-two (22) separate statements made by the Exchange Act Defendants after the IPO are materially false and misleading.  For each of these twenty-two statements, Plaintiffs make the same conclusory allegation that the statement was materially false and misleading because the Exchange Act Defendants allegedly "failed to disclose that Argo was not sufficiently capitalized and had far too little cash on hand to (1) operate a facility the size and scale of Helios and (2) withstand foreseeable setbacks inherent to any cryptocurrency mining operation, such as higher energy prices and the decrease in the price of Bitcoin."  (AC ¶¶ 131, 134, 136, 138, 140, 143, 146, 151, 162, 164, 167; *see also* ¶¶ *id.* 154, 157, 159, 257 (similar).)  None of these 22 statements can form the basis of a Section 10(b) claim because the alleged misstatements  (1) are not sufficiently alleged to be false; (2) are protected by the statutory safe harbor and the bespeaks caution doctrine; and/or (3) qualify as corporate puffery or an opinion.

##### 1.    Plaintiffs Fail to Sufficiently Allege Statements to Be False

Plaintiffs fail to specifically allege statements **B1** through **B22** were false or misleading at the time they were made.  "The Second Circuit has repeatedly stated that plaintiffs must do more than simply assert that a statement is false—'they must demonstrate with specificity why that is so.'" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (citing *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  "A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material

10

misstatement was false *at the time it was made*.  Put another way, without *contemporaneous* falsity, there can be no fraud." *Lululemon*, 14 F. Supp. 3d at 571 (emphasis in original).

For example, Plaintiffs point to several statements by the Exchange Act Defendants that reference that Argo had sufficient resources or cash to support its operations and expansions.  (*See* App'x B, **B1**, **B3** through **B6**, **B8**, **B9**, and **B12** through **B22**.)  Plaintiffs claim that these statements are false and misleading because, in fact, Argo was undercapitalized.  (AC ¶ 10.)  But nowhere do Plaintiffs allege – as they must – that the Exchange Act Defendants knew or should have known of any facts which would have indicated that Argo was undercapitalized *at the time* any of the alleged misstatements were made.  Plaintiffs similarly fail to identify any specific information in the Exchange Act Defendants' possession that they should have disclosed to avoid making any misleading statements concerning Argo's financial resources.  Instead, Plaintiffs invoke only the same generalized, conclusory allegation that the Exchange Act Defendants "failed to disclose that Argo was not sufficiently capitalized and had far too little cash on hand"—repeated ad nauseum after nearly every challenged statement.  (AC ¶¶ 131, 134, 136, 138, 140, 143, 146.)  Without particularized allegations as to information known to the Exchange Act Defendants about Argo's purported undercapitalization at the time the alleged misstatements were made, Plaintiffs have failed to sufficiently allege that the statements are false.  *See Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 480–81 (S.D.N.Y. 2021).  Moreover, Argo did disclose its precarious cash position. For example, the Exchange Act Defendants disclosed that Argo "didn't have the same kind of huge amounts of cash in the bank that some of [its] peers had."  (Haims Decl., Ex. 1, p.25); AC ¶ 224.)  The Exchange Act Defendants also disclosed in December 2021 that Argo would be "probably less profitable in 2022 than it has been in 2021."  (CNBC Interview (Dec. 21, 2021)); AC ¶ 133.)

11

Plaintiffs also point to statements where Argo stated it was in a strong financial position because "cost of power, [was] not a concern because energy prices in Texas were extremely low." (AC ¶ 7.) (*See* App'x **B2**, **B7**, **B10**, and **B11**.) Plaintiffs claim that these statements are false and misleading because Argo was too undercapitalized to withstand "seasonally high energy prices[.]" (AC ¶ 10.) Plaintiffs' allegations – again – are insufficient. Nowhere do Plaintiffs allege that the Exchange Act Defendants knew at the time of their statements that the cost of power would increase significantly, or that the Exchange Act Defendants possessed information demonstrating that they knew Argo could not withstand fluctuations in the cost of energy.

Here too, the Exchange Act Defendants disclosed the risk that Argo "may be affected by price fluctuations in the wholesale and retail market" and warned that "market prices for power…may adversely affect" the business. (2021 Form 20-F p.37.) These disclosures concerning the risks adverse power prices would have on Argo's fortunes prevent Plaintiffs from plausibly pleading falsity. *See Born,* 521 F. Supp.3d at 485 (holding that a reasonable investor could not have been misled where defendant disclosed allegedly missing facts "although in more circumscribe and less jarring terms.").

### 2. Plaintiffs Improperly Rely Upon Protected Forward Looking Statements

Plaintiffs allege that statements from the Exchange Act Defendants concerning Argo's optimistic projections concerning its capitalization and potential for growth were materially false and misleading. (*See* App'x B, **B1** and **B4** through **B8**.) Plaintiffs allege that these statements are false because Argo did not disclose that it (i) could not manage cryptocurrency price volatility, (ii) was not sufficiently capitalized and did not have enough cash on hand to operate the Helios Facility, and (iii) was not able to withstand energy price changes. (*See* AC ¶¶ 131, 136, 138, 140, 143, 162.) However, and as detailed in Appendix B, statements **B1** and **B4** through **B8** are either

forward looking or otherwise paired with additional statements disclosing the very risk that the Plaintiffs allege was withheld from investors.

Forward looking statements are signaled to investors through the use of "linguistic cues like 'we expect' or 'we believe'" which, "generally should be sufficient to put the reader on notice that the company is making a forward-looking statement." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 769 (2d Cir. 2010). Statements **B1** and **B4** through **B8**, each contain these linguistic cues, indicating that they are forward-looking. These statements include, for example:

- "*We believe* that our sources of liquidity and capital resources and capital resources will be sufficient to meet our existing business needs for at least the next 12 months…" (**B6** (emphasis added).)

- Defendants "*anticipate* that our net electricity costs will be below $0.02 k/Wh after including the benefits of participating in demand response programs offered by ERCOT." (**B7** (emphasis added).)

- "[W]e're well-positioned *to continue on* the growth phase…And as *we look forward*, *we look forward* with optimism into the coming year… (**B5** (emphasis added).)

The Exchange Act Defendants also provided detailed disclosure about the allegedly undisclosed risks of the volatility of cryptocurrency and price fluctuations in energy prices. For example, Argo disclosed that the volatility of cryptocurrency was a business risk and warned that there "is no assurance that any digital asset, including Bitcoin, will maintain its value or that there will be meaningful levels of trading activities to support markets in any digital asset" and that "any declines" in "the price of such cryptocurrencies or market liquidity for cryptocurrencies and digital assets generally would adversely affect [Argo's] revenue and ability to fund [its] operations." (2021 Form 20-F pp.12-13, AC ¶ 139.) With respect to fluctuations in energy prices, Argo disclosed that "[m]arket prices for power, generation capacity and ancillary services, are unpredictable" and warned that these fluctuations may "adversely affect[]" its "business, prospects, financial condition, and operating results." (2021 Form 20-F p.37.) (*See* App'x B, **B7**.)

13

### 3. Plaintiffs Improperly Rely Upon Puffery or Statements of Opinion

Plaintiffs' allegations also fail because they allege that certain statements are false and misleading – i.e., statements **B1** through **B5, B8, B12** through **B14**, and **B16** through **B21** – even though each qualify as statements of general corporate optimism or classic "puffery" statements that are "too general to cause a reasonable investor to rely upon them." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2013). Many of these statements express or convey the Exchange Act Defendants' optimism as to Argo's current finances and growth potential. For example, **B1** states that "Argo has **sufficient flexibility** to pursue [its] strategic growth plans in Texas, infrastructure, and machines, et cetera." However, statements concerning "flexibility, strength, or resilience" are "optimistic statements" that a reasonable investor should not rely on. *In re Garrett Motion Inc. Sec. Litig.*, No. 1:20-CV-07992 (JLR), 2023 WL 2744029, at *17, n. 13 (S.D.N.Y. Mar. 31, 2023). On this basis alone, each statement set forth above fails to form a basis for Plaintiffs' Section 10 claim. *See id.* at n.13 (collecting cases).

Statements **B5, B8, B12, B13, B14, B18,** and **B19** express that Argo is "well-positioned" financially – another tell-tale sign of puffery. (*See, e.g.*, App'x B, **B5** ("we're **well positioned** to continue on the growth phase")**, B8** ("We're in a very **healthy position** at the moment in terms of our hodl…")**, B12** ("**I like where we're positioned**")**, B13, B14, B18,** and **B19**.) It has been held in this district that "statements expressing a general view that 'things are going well,' that the company is 'well positioned,' or that year was 'successful' are generally not actionable" puffery. *City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*, No. 17 CIV. 3501 (JFK), 2019 WL 452051, at *4 (S.D.N.Y. Feb. 5, 2019).

Further, statements **B2, B4, B14, B16,** and **B20** tout Argo's competitive advantage and leadership in the market amongst its peers. (*See* App'x B, **B2** ("Argo had access to 'the **cheapest**

14

power anywhere in the world'"), **B4** ("runway for growth is **unmatched by Argo's peers**"), **B14** ("We're in that tier A…That's how we think about it, **maintaining that economic advantage over our peers**…"), **B16** ("You know, definitely in the **top echelon**…"), **B20** ("Mining margin…continues to be the **highest amongst our peers**…").)  These statements are inactionable puffery because "courts have long understood" that "statements concerning being a market leader…constitute corporate puffery."  *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 553 (S.D.N.Y. 2021); *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018) (statements regarding company's "competitive advantage" and "confidence in its competitiveness" are not actionable).

Other statements—**B6**, **B9**, **B13**, **B18**, and **B22**—identified by Plaintiffs are inactionable opinions because they "are not quantifiable or factual" and "are subject to interpretation." *Altayyar v. Etsy, Inc*., 242 F. Supp. 3d 161, 174 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018). Each of these statements uses qualifiers such as "we believe" (**B6**, **B18** and **B22**) or "we feel" (**B9** and **B13**), which indicates that these statements are statements of opinion.  *See Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (statement that "[w]e believe we are well positioned to maintain this growth" as opinion), *aff'd*, 826 F. App'x 111 (2d Cir. 2020);  *In re Seadrill Ltd. Sec. Litig.*, No. 14 CIV. 9642 (LGS), 2016 WL 3461311, at *11 (S.D.N.Y. June 20, 2016) ("we feel increasingly comfortable" is a statement of opinion). Additionally, as described *infra* III.B.2, Plaintiffs do not plead any facts to support that Defendants did not honestly believe these statements when made, nor do Plaintiffs alleges that Defendants omitted information that makes the statement misleading to a reasonable investor.  Thus, these statements of opinion are inactionable.  *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

15

**B.      Plaintiffs Plead No Facts Giving Rise to a Strong Inference of Scienter**

Plaintiffs make no attempt to allege *any* motive on behalf of *any* of the Exchange Act Defendants to commit fraud.  Nor do Plaintiffs state any direct allegations of intent to defraud by any of the Exchange Act Defendants, such as a conspicuously well-timed stock sale or some corporation transaction by Argo taking advantage of allegedly inflated stock.  Without such direct allegations, Plaintiffs are left to argue scienter by circumstance.  To do so, however, "'the strength of the circumstantial allegations must be correspondingly greater.'"  *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 469 (S.D.N.Y. 2008) (quoting *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).  Plaintiffs' circumstantial allegations fail to allege intentional misbehavior or recklessness plausibly, let alone compellingly.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

**1.      Plaintiffs Fail to Allege "Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness."**

The primary thrust of Plaintiffs' scienter theory is that the Exchange Act Defendants knew, or were reckless in not knowing, that their statements were "false and/or misleading" because they had "possession of or access to information" to the contrary. (AC ¶ 190.)  However, "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  Critically, Plaintiffs must offer factual allegations that the Exchange Act Defendants had such knowledge "contradicting their public statements *at the time the statements were made*."  *Alaska Laborers Emps. Ret. Fund v. Scholastic Corp.*, No. 07 CV 7402 (GBD), 2011 WL 3427208, at *4 (S.D.N.Y. Aug. 3, 2011) (emphasis added) (*cf. Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  Plaintiffs make no such allegations.

16

>           i.      **Plaintiffs fail to identify contradictory reports or statements concerning the Fixed-Price PPA**

Plaintiffs assert that the Exchange Act Defendants made two statements representing to investors that Argo was "evaluating options for a long-term, fixed-priced PPA," (AC ¶ 108), and later provided in May 2022 that Argo could not enter into a fixed-priced PPA due to "really high" energy costs. (*Id.* ¶ 111.) Plaintiffs allege that these statements were false and misleading because the Exchange Act Defendants "knew or recklessly disregarded the fact that Argo did not meet the requirements" for obtaining a fixed-price PPA in the first place. (*Id.* ¶ 202.) As an initial matter, nowhere do Plaintiffs allege that the Exchange Act Defendants guaranteed that Argo would enter into a fixed-price PPA. Instead, as alleged in the AC, they informed investors that Argo was "*evaluating options* for a long-term, fixed-price PPA to sign in the near future." (*Id.* ¶ 108 (emphasis added).) The fact that Argo later chose not to enter into a fixed-price PPA is of no moment for the purposes of Section 10(b) and Rule 10b-5 and does not render its statements false or misleading. Plaintiffs allege no facts to show that Argo possessed any information that made Argo's statement that it was *evaluating* entering into a fixed-price PPA false and misleading at the time the statement was made.

Nor do Plaintiffs sufficiently allege that "high energy costs" was not a factor in Argo not entering into a fixed-price PPA. Plaintiffs ostensibly assert that the Exchange Act Defendants knew that either Argo's purported undercapitalization, or lack of "creditworthiness" rather than "high energy costs," were the real reasons Argo did not enter into a fixed-price PPA. (*Id.* ¶¶ 186-87.) Plaintiffs' allegations are based on a patchwork of statements from CW-2, who is "a former data technician at the Argo Helios facility" whose "duties entailed unpacking the [mining] machines upon arrival at the facility" (*Id.* ¶ 38), and inferences from conference calls and reports published long after the allegedly false and misleading statements were made. However, these

17

sources say nothing about the Exchange Act Defendants' mental state at the time Argo evaluated entering into a fixed-price PPA. Indeed, none of the sources Plaintiffs point to identify any specific information that the Exchange Act Defendants were aware of *at the time of the challenged statements*, that caused Argo to decline to enter into the fixed-price PPA. (*Id.* ¶ 202.)

Plaintiffs attempt to save their scienter allegations by citing to a statement in an analyst report noting that Galaxy was "better-positioned to negotiate a favorable fixed-price PPA with ERCOT, given its ability to post collateral." (*Id.* ¶ 187.) The sole support for the inference that Argo was *too* undercapitalized to enter into a fixed-price PPA, is an unsubstantiated claim from CW-2 that "Argo did not have enough capital for the PPA process." (*Id.* ¶ 188.) Plaintiffs fail to allege any basis by which CW-2 (a Argo Helios Facility employee who "unpack[ed] the [mining] machines" (*Id.* ¶ 38)), would know about Argo's capitalization, or that CW-2 had *any* interaction with any of the Exchange Act Defendants, let alone one which would have led CW-2 to believe that any purported undercapitalization was a factor in the Exchange Act Defendants declining to enter into a fixed-price PPA. Plaintiffs' allegations related to CW-2 are without merit. *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (discounting allegations of ""low-level", "rank-and-file" employees whom the complaint did not indicate had any "access to aggregated data regarding [the company's]" financial data), *aff'd sub nom. Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 430 F. App'x 63 (2d Cir. 2011).

Plaintiffs also contort a statement by Galaxy, made following its purchase of the Helios Facility in December 2022, after the end of the class period, to mean that Argo was unable to enter into a fixed-price PPA because "Argo was not creditworthy," rather than Argo's explanation to investors that it did not enter into the agreement "due to high energy costs." (*See* AC ¶ 186 ("While

18

[Argo] was generally unable to enter into fixed price hedges, [Galaxy does] have this capability due to [its] creditworthiness.").)  However, contrary to Plaintiffs' assertion, Galaxy's statement about its *own financial condition* says nothing about Argo's creditworthiness, let alone about any specific information that the Exchange Act Defendants had about Argo's purportedly deficient creditworthiness when Argo purportedly declined to enter into a fixed-price PPA.

In short, Plaintiffs fail to allege facts contradicting that the Exchange Act Defendants believed that "high energy costs" was a factor in declining to enter into a fixed-price PPA at the time Argo made the representation.  Rather, an equal – if not more plausible – reason for Argo not entering into the fixed-price PPA was that it was too costly, as Argo told investors.  (*See* AC ¶ 111 ("power prices have been 'really high so it's like signing a mortgage when interest rates are really high you have to wait for them to come down…'").)

### ii. Plaintiffs fail to identify contradictory reports or statements concerning Argo's finances

Plaintiffs allege that the Exchange Act Defendants "had possession of or access to information indicating that their statements regarding the state of [Argo's] finances were false and/or misleading," but fail to identify any specific contradictory reports or statements known by them.  Instead, Plaintiffs point to generalized information known or obtained by the Exchange Act Defendants by virtue of their executive positions, none of which specify any undisclosed financial risk known by them.  (*See, e.g.*, AC ¶ 205 ("Defendant Wall, as Argo's [CEO]…would have been involved in determining whether Argo met ERCOT's requirements")); (*see also id.* ¶¶ 206, 210, 212, 223.).)  For example, Plaintiffs allege that Exchange Act Defendants generally knew of Argo's operating costs and balance sheets (*id.* ¶ 191), "ERCOT's requirements for obtaining a Fixed-Price PPA" (*id.* ¶ 202), Argo's loans and equipment financing agreements (*id.* ¶ 208), and Argo's significant holdings in Bitcoin (*id.* ¶ 220).

19

Nearly all of Plaintiffs' allegations of the Exchange Act Defendants' alleged knowledge is based upon statements made during earnings and "conference calls (*id.* ¶¶ 193, 196, 198-199, 207, 216-218, 224)," "operational update videos (*id.* ¶¶ 194-195, 200)," or entering into agreements on behalf of Argo (*id.* ¶¶ 213, 214).  But, none of these statements reference any specific piece of adverse knowledge or information possessed by the Exchange Act Defendants.  Rather, Plaintiffs only infer that the Exchange Act Defendants had such knowledge.  The law in this Circuit is clear, however, that inferences of scienter based upon unspecified information potentially possessed by defendants is insufficient to establish scienter as it "do[es] not suffice" to infer scienter from the fact that, "due to the defendants'…executive managerial position, they had access to…any adverse information."  *Ramzan v. GDS Holdings Ltd.*, No. 19-CV-9154 (LAK), 2020 WL 1689772, at *4 (S.D.N.Y. 2020) (plaintiffs failed to allege scienter where they alleged individual defendants were "directly involved in the day-to-day operations of the Company at the highest levels").  "Although their high-level positions should presumably have provided the Individual Defendants access to" the allegedly adverse undisclosed information, "the issue is whether there *really were* clearly contrary predictions."  *In re Skechers USA, Inc. Sec. Litig.,* 444 F. Supp. 3d 498, 528 (S.D.N.Y. 2020 (emphasis added)).  On this critical point, Plaintiffs' allegations fail.

In an attempt to salvage their securities fraud claims, Plaintiffs cite a confidential witness (CW-3) claiming that the Exchange Act Defendants were "routinely monitoring" a third-party software that reflected "the amount of Bitcoin being mined and the energy costs of doing so in real time."  (AC ¶ 192.)  But, Plaintiffs fail to plead any specific data available in the third-party software allegedly reviewed by the Exchange Act Defendants, or how that purported information "contradicted" the alleged misstatements by them.

20

Moreover, the allegations concerning the basis of CW-3's purported knowledge are specious.  Although Plaintiffs plead that CW-3 had "a few" unspecified interactions with Wall, they nowhere allege that CW-3 interacted with Wall on these specific issues, or that CW-3 interacted at all with Appleton, or any other Argo executives.  (*Id.* ¶ 39.) On the contrary, Plaintiffs acknowledge that CW-3 did not discuss these issues directly with senior corporate level executives. (*See, e.g.*, *id.* ¶ 192 ("CW-3 would receive a call from Papadakis *representing* that Wall or El Bakly had requested that CW-3" resolve issues) (emphasis added).)  CW-3's ground level observations of the Exchange Act Defendants are not probative of the Exchange Act Defendants' mental state.  *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011) (holding CW allegations "particularly uninformative" where pleading suggests that the CW "got his information not from [executive], but through intermediaries" and "purport to read [executive's] mind.").

### 2.    Plaintiffs' Remaining Boilerplate Scienter Allegations as to the Exchange Act Defendants Fail

In a last-ditch effort to plead scienter, Plaintiffs assert three separate theories that they claim indicate scienter: (i) the alleged misstatements related to Argo's core operations and, thus, knowledge of contrary facts may be imputed to the Exchange Act Defendants; (ii) Defendant Appleton's and Wall's resignations from Argo after the class period; and (iii) Defendant Appleton's and Wall's SOX certification of Argo's SEC Form 20-F filings.  For the reasons detailed below, they all fail.

### i.    "Core operations" Theory

Plaintiffs allege that because the alleged misstatements relate to Argo's "core operations"— Argo's mining operations and the operation of the Helios Facility—knowledge "may be imputed to the Individual Exchange Act Defendants."  (AC ¶ 225.)  The core operations

21

doctrine is inapplicable where, as here, Plaintiffs fail to allege knowledge of facts contradicting Defendants' public statements, or do not otherwise plead an independent basis for scienter. *See In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 294 (S.D.N.Y. 2006) ("Even if [critical product] was sufficiently significant that knowledge of its true prospects can be imputed to the individual defendants, *plaintiffs must still adequately allege that defendants lacked a reasonable basis for optimism about [it].*") (emphasis added). In any event, courts in the Second Circuit have casted doubt on "whether the core operations doctrine is good law after the enactment of the PSLRA." *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings plc*, No. 18-CV-10330 (JPO), 2020 WL 2834857, at *4 (S.D.N.Y. June 1, 2020).

### ii.    Executive Departures

Plaintiffs' theory that Defendants Appleton's and Wall's departures from Argo support an inference of scienter is also unavailing. Appleton's and Wall's departures announced in February 2023 were post-class period, and Wall's resignation was within approximately *nine months* of the first purported corrective disclosures began to leak out to the market. (*See* AC ¶¶ 184-85.) Their belated departures from Argo say nothing about their mental state at the time of any of the purported misstatements, and Plaintiffs do not allege facts linking their resignations to the alleged fraud. Thus, Plaintiffs fail to allege an inference of scienter on this basis. *See Tung v. Bristol-Myers Squibb Co.,* 412 F. Supp. 3d 453, 461 n.4 (S.D.N.Y. 2019) (plaintiffs failed to allege scienter where "[p]laintiffs have pleaded no specific facts that indicate that the resignation was somehow tied to the fraud alleged…or that defendants' scienter was otherwise evident.").

### iii.    Defendants' SOX Certification

Finally, Plaintiffs allege that the required Sarbanes-Oxley Act certifications for Argo's SEC Form 20-F filings demonstrate scienter. (AC ¶ 234.) But those certifications merely stated that each filing contained no false statements or material omissions, and they therefore add no

22

inference of fraudulent intent to Plaintiffs' claims. Each of the certifications was prefaced by the qualification that it was "based on my knowledge," *see id.*, and, as established *supra*, Plaintiffs do not allege facts showing that either Wall or Appleton signed the certifications knowing or were reckless in not knowing any specific statement in the SEC filing was false. Where, as here, "the complaint does not adequately allege that [defendants] had actual knowledge of [unlawful behavior] it undermines the allegation that they knew that the SOX certifications were false." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) ("Plaintiff cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements.").

### 3. Plaintiffs Fail to Allege Corporate Scienter

Because Plaintiffs fail to plead scienter on behalf of the individual Exchange Act Defendants, or anyone else at Argo "whose intent could be imputed to the corporation," they also fail to plead scienter as to Argo. *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 300–01 (S.D.N.Y. 2019) (citing *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008)). Plaintiffs' allegation that Argo acted with scienter should also be dismissed. *See Ramzan v. GDS Holdings Ltd.*, No. 19-CV-9154 (LAK), 2020 WL 1689772, at *5 (S.D.N.Y. Apr. 7, 2020) (finding that "[h]aving failed to plead facts sufficient to give rise to a strong inference of *scienter* as to [the executives], or to allege facts concerning the intent of any other individuals at [the company], the amended complaint does not plead *scienter* as to [the company]").

### 4. Plaintiffs' Poorly Disguised "Fraud by Hindsight" Theory is Outweighed By the More Compelling Non-culpable Inferences

The thrust of Plaintiffs' scienter theory is that statements reflecting the Exchange Act Defendants' optimistic projections about Argo's finances and operations support an inference of

fraud because the Exchange Act Defendants' expectations did not come to pass.  Plaintiffs allege that the Exchange Act Defendants "knew or were reckless in not knowing that Argo had far too little cash on hand to operate Helios and to withstand foreseeable risks." (AC VI. B.)  However, without allegations supporting that the Exchange Act Defendants had knowledge of undercapitalization, all that remains are inferences that they *must have* or *would have known* of any undercapitalization by Argo because of its later financial performance.  However, this is a classic example of "fraud by hindsight" that is routinely rejected.  *See Born,* 521 F. Supp.3d at 493 (holding that plaintiffs fail to plead scienter where defendants' "poor [] performance…may provide *hindsight* support for Plaintiffs' assertions") (emphasis added.)).   The nonculpable inference—the Exchange Act Defendants' optimistic projections did not come to pass—is decidedly more compelling than the baseless inference of fraud.  *Tellabs*, 551 U.S. at 314.

## IV.    PLAINTIFFS FAIL TO STATE A SECTION 20(A) CLAIM.

Because Plaintiffs fail to state a claim under Section 10(b), the Section 20(a) claim should be dismissed.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (affirming dismissal of Section 20(a) claim for failure to plead Section 10(b) claim).

**CONCLUSION**

For the reasons stated above, Plaintiffs' Amended Complaint should be dismissed.

Dated:        New York, New York          **MCDERMOTT WILL & EMERY LLP**
              November 22, 2023

                                          By:  _/s/ Joel C. Haims_
                                          Joel C. Haims
                                          Michael R. Huttenlocher
                                          Kierstin S. Fowler
                                          Christopher J. Whalen
                                          One Vanderbilt Avenue
                                          New York, New York 10017
                                          (212) 547-5400
                                          jhaims@mwe.com
                                          mhuttenlocher@mwe.com
                                          ksfowler@mwe.com
                                          chwhalen@mwe.com

                                          *Attorneys for Defendants*

25