**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RICHARD HAWES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> ARGO BLOCKCHAIN, PLC, PETER WALL, ALEX APPLETON, MATTHEW SHAW, SARAH GOW, COLLEEN SULLIVAN, and MARIA PERRELLA, <br><br> Defendants. | Case No. 1:23-cv-07305-CM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**MCDERMOTT WILL & EMERY LLP**

Joel C. Haims
Michael R. Huttenlocher
Kierstin S. Fowler
Christopher J. Whalen
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
jhaims@mwe.com
mhuttenlocher@mwe.com
ksfowler@mwe.com
chwhalen@mwe.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT................................................................................................................................2

I.      PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT................................2

      A.      Plaintiffs Utilize Improper Hindsight Pleading to Support Their
Claims ................................................................................................................2

      B.      The Safe Harbor and Bespeaks Caution Doctrine Are Applicable..........................3

      C.      Defendants' Statements Are Immaterial Puffery ......................................................5

II.      PLAINTIFFS FAIL TO PLEAD SCIENTER .........................................................6

      A.      Plaintiffs Fail to Allege Contradictory Information Known To or
Accessed By the Exchange Act Defendants ..............................................................6

      B.      Plaintiffs Cannot Rest Scienter on "Core Operations" Doctrine ...........................8

      C.      Plaintiffs' Allegations of "Circumstantial Evidence" Fail to
Support Scienter ..................................................................................................9

CONCLUSION............................................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................................................9

*Ashland Inc. v. Morgan Stanley & Co.*,
700 F. Supp. 2d 453 (S.D.N.Y. 2010)......................................................................................5

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017)....................................................................................10

*In re Federated Dep't Stores, Inc., Sec. Litig.*,
2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) ...........................................................................8

*Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................................7

*Gissin v. Endres*,
739 F. Supp. 2d 488 (S.D.N.Y. 2010)......................................................................................4

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)................................................................................9, 10

*Gross v. AT&T Inc.*,
2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021).........................................................................2

*Gross v. GFI Grp., Inc.*,
162 F. Supp. 3d 263 (S.D.N.Y. 2016)......................................................................................6

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021)..................................................................................3, 4

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)......................................................................................9

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016).......................................................................................................5

*Lin v. Interactive Brokers Grp., Inc.*,
574 F. Supp. 2d 408 (S.D.N.Y. 2008)......................................................................................4

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011) ...............................................................................................9

*Rudani v. Ideanomics, Inc.*,
   2020 WL 5770356 (S.D.N.Y. Sept. 25, 2020)................................................................7

*In re Sadia, S.A. Sec. Litig.*,
   643 F. Supp. 2d 521 (S.D.N.Y. 2009)..........................................................................10

*In re Salix Pharms., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)................................................................10

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016)............................................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018).................................................................3

*Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v.
   Olo Inc.*,
   2023 WL 8287681 (S.D.N.Y. Nov. 30, 2023)..................................................................5

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008)............................................................................8

*Thomas v. Shiloh Indus., Inc.*,
   2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) ...............................................................6

*Thomas v. Shiloh Indus., Inc.*,
   2018 WL 4500867 (S.D.N.Y. Sept. 19, 2018)..............................................................10

*Washington State Inv. Bd. v. Odebrecht S.A.*,
   461 F. Supp. 3d 46 (S.D.N.Y. 2020)..............................................................................6

*Yannes v. SCWorx Corp.*,
   2021 WL 2555437 (S.D.N.Y. June 21, 2021) ................................................................3

## PRELIMINARY STATEMENT

Argo is a publicly traded U.K. based cryptocurrency mining company. Plaintiffs allege that they bought Argo's American Depositary Receipts in Argo's U.S. IPO and in the aftermarket. Plaintiffs acknowledge that "Bitcoin is an extremely volatile currency" (AC at ¶ 1), "Bitcoin mining is extremely energy-intensive", and that swings in energy prices could impact the profitability of Argo's operations (AC at ¶ 2). Not surprisingly, when the price of Bitcoin declined precipitously in late 2021, coinciding with an increase in energy prices, Argo's share price declined. Plaintiffs claim that Defendants made false and misleading statements in its IPO Registration Statement and afterwards about Argo's capitalization and ability to withstand these adverse market conditions.

For the reasons already identified in Defendants' opening memorandum (ECF No. 50, the "Motion" or "MTD")[1] and its appendices (the "Appendices"), Plaintiffs' AC should be dismissed. (ECF Nos. 50-1 (App'x A); 50-2 (App'x B).) Defendants' moving papers painstakingly explained why each alleged misstatement in the AC is not actionable. In response, Plaintiffs' opposition (ECF No. 54, "Opposition") does little to nothing to address Defendants' specific arguments. Plaintiffs only "defend" six of twenty-eight total alleged misstatements and "rebut" just one of the dozens of disclosed risks Defendants identified in the Appendices. (Opp'n at 10 n.2, 11, 16.) Rather than engage with Defendants' arguments, Plaintiffs simply rehash the same allegations made in the AC. In so doing, Plaintiffs do not point to any facts that the Defendants knew at the time any alleged misstatement was made that would render any of them false. Rather, Plaintiffs rely on "later events" and "hindsight pleading" in a feeble attempt to cobble together a claim. But Defendants could not foresee the future and are not required to under the federal securities laws.

---

[1] Unless otherwise defined herein, defined terms have the same meaning as in the MTD.

Plaintiffs likewise fail to establish scienter, as they do not allege any facts that Defendants knew of any information contrary to their public statements, and Plaintiffs' "circumstantial" evidence is specious, at best. The AC should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT

Plaintiffs' Section 11 and 10(b) claims are based on Defendants' allegedly false and misleading statements concerning Argo's capitalization and, thus, its ability to weather "increased energy costs and the decreasing price of Bitcoin." (Opp'n at 8-18; AC ¶¶ 68-79, 129-167.) In their papers, Defendants show why each alleged misstatement is inactionable. Plaintiffs fail to refute these assertions and, as a result, the AC should be dismissed.

#### A.    Plaintiffs Utilize Improper Hindsight Pleading to Support Their Claims

For statements **A3-A6** and **B1-B22** in the Appendices, Defendants explained in detail how each of these statements are not actionable because Plaintiffs fail to allege facts supporting the allegation that those "statements were false at the time they were made." *Gross v. AT&T Inc.*, 2021 WL 9803956, at *3 (S.D.N.Y. Sept. 27, 2021); (*see* MTD at 5-7, 10-12). Plaintiffs make no attempt to dispute the lack of falsity of each misstatement. Instead, Plaintiffs broadly claim that Defendants knew Argo was "undercapitalized" at the time of all the alleged misstatements (Opp'n at 8-9, 12-15), but nowhere do Plaintiffs provide factual allegations that Defendants knew that the subsequent change in Bitcoin mining market conditions would render Argo "undercapitalized."

In the absence of allegations of contemporaneous knowledge of falsity, Plaintiffs assert that they can and do "rely on later events" to establish that each of these statements was false when made. (Opp'n at 9.) The "later event" that Plaintiffs rely upon for their Section 11 claim is Argo's disclosure of financial difficulties approximately *9 months after* the IPO. And, for their Section 10 claim, Plaintiffs refer to statements made in summer 2022 concerning Argo's purported failure to

2

enter into a fixed-price PPA and the disclosure that Argo mined 25% fewer Bitcoin in May 2022. (Opp'n at 9, 14.) However, these allegations are insufficient to plead the falsity of the earlier statements because, even when relying on later events, Plaintiffs must still allege facts "detailing" how Defendants "could have told the future"—*i.e.*, foresaw the extent to which the cost of energy would increase while the price of Bitcoin would simultaneously decrease. *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y. 2021) ("[P]ost hoc description[s] of events do[] not speak to what the Company knew or should have known at the time"). Indeed, the cases cited by Plaintiffs are distinguishable on this basis. *See e.g.*, *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *7 (S.D.N.Y. June 21, 2021) (alleging "that publicly accessible information" was available to defendants days before alleged fraud was disclosed); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *13 (S.D.N.Y. Nov. 26, 2018) (McMahon, J.) (defendants misstated the company's cash reserves because plaintiff alleged "Defendants knew that its reserves did not account for losses" and that "its reserve figures provided a misleading picture of" the reserves).

### B.    The Safe Harbor and Bespeaks Caution Doctrine Are Applicable

For statements **A1-A5** and **B1**, **B4-B8**, in the Appendices, Defendants explained in detail how each of these statements are protected under the bespeaks caution doctrine[2] or the Safe Harbor. Plaintiffs do not dispute that each statement contains linguistic cues such as "we believe" or "we expect" that indicate they are forward looking. (MTD at 7-8, 12-13.) Plaintiffs also do not dispute that each forward-looking statement is paired with statements disclosing the very risk that Plaintiffs allege was withheld from them. (*Id.*) Nor do they dispute that such statements, when

---

[2] Defendants do not contest that forward looking statements made in connection with an IPO are subject to the bespeaks caution doctrine.  The term "forward looking statement" was used for consistency in presentation across Appendix A and Appendix B.

accompanied by "sufficient warnings" to an investor, "render[ ] the alleged omissions or misrepresentations immaterial as a matter of law'" under the bespeaks caution doctrine and/or the Safe Harbor. *Lin v. Interactive Brokers Grp., Inc.,* 574 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (citation omitted); 15 U.S.C. § 78U-5(c)(1)(A)(i). Instead, Plaintiffs assert that the bespeaks caution doctrine and Safe Harbor are inapplicable here. There is no merit to this argument.

Plaintiffs assert that certain statements are "mixed statements of present/future fact" and therefore the "*portion of the statement that refers to the present*" is not protected by the bespeaks caution doctrine. (Opp'n at 10, 16 (referencing **A3, A5, B1, B4, B5** and **B8**)) (emphasis added.) However, Defendants "refer to the present only as a means for gauging future possibilities" and, thus, the bespeaks caution doctrine still applies. *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010) (holding that statements are forward looking where defendants "did not make guarantees about the present; they were stating their educated guesses about what the preceding quarter's financial data would mean for the Company's future.").

Plaintiffs also assert that the bespeaks caution doctrine is inapplicable to statements **A1-A5** because it "does not protect material omissions," and cautionary language does not "insulate" Argo from liability where it "fail[ed] to disclose that the risk has transpired." (Opp'n at 10-11.) And, with respect to statements **B1, B4, B5** and **B8**, Plaintiffs assert that they are subject to an exception to the Safe Harbor because the Exchange Act Defendants were aware of "undisclosed facts tending to seriously undermine the accuracy of the statement[s]." (Opp'n at 17.) But, again, Plaintiffs fail to plead what facts were known or knowable by the Defendants about Argo's capitalization but were nevertheless undisclosed. *See In re HEXO*, 524 F. Supp. 3d at 302 (holding bespeaks caution doctrine and safe harbor applicable where "plaintiffs do not allege any facts to

4

support the notion that [defendants] knew that" adverse act would occur, and "cautionary language address[ed] the relevant risk directly.").

### C.    Defendants' Statements Are Immaterial Puffery

For statements **A1-A5** and **B1-B5**, **B8**, **B12-B14**, and **B16-B21**, Defendants explained in detail how each statement constitutes inactionable puffery. (MTD at 9, 14-15.) Plaintiffs do not refute any of these arguments. Instead, Plaintiffs make the catch-all assertion that these statements are not puffery because they were made in a context of "reassuring investors" while Argo was allegedly "concealing information that contradicted [its] statements." (Opp'n at 17-19.)

Plaintiffs' assertion that these statements are not puffery runs into the same problem that defeats Plaintiffs' other contentions—they have not and cannot point to any facts known to Defendants about Argo's inability to weather changing marking conditions that contradict their public statements. *See Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.,* 2023 WL 8287681, at \*9 (S.D.N.Y. Nov. 30, 2023) (holding that statements are puffery where "the SAC does not adequately allege defendants knew the contrary was true"). However, even if Plaintiffs had pled any specific contradictory information that Defendants withheld, this "does not cure [the statements'] *generality*, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97–98 (2d Cir. 2016) (emphasis added). Moreover, the statements must be analyzed in context as they were made to parties choosing to invest in the volatile cryptocurrency industry. *See Ashland Inc. v. Morgan Stanley & Co.*, 700 F. Supp. 2d 453, 471 (S.D.N.Y. 2010) (as a sophisticated investor, "it was unreasonable for [plaintiff] to rely upon the highly general statements alleged as misstatements in this case.").

The cases Plaintiffs cite to in support of their puffery arguments are distinguishable because in those cases, the plaintiffs alleged facts that were allegedly known by Defendants but not

disclosed. *See Gross v. GFI Grp., Inc.*, 162 F. Supp. 3d 263, 269 (S.D.N.Y. 2016) (puffery statements were made when defendants "knew [the] merger was not a unique" transaction or "intended to optimize value" because defendant allegedly intended to use the transaction to take defendant's broker-dealer business private); *Washington State Inv. Bd. v. Odebrecht S.A.*, 461 F. Supp. 3d 46, 73-74 (S.D.N.Y. 2020) (alleging puffery statements were made when defendants simultaneously omitted information about defendants' involvement in a bribery scheme). Here, Plaintiffs' rhetoric and sweeping generalizations are insufficient to support a claim.

## II.    PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs' arguments concerning scienter again rehash the allegations made in the AC, *i.e.*, that the Exchange Act Defendants knew or should have known "facts" contradicting their public statements about Argo's ability to withstand changing market conditions. Each of Plaintiffs' theories suffer from the same fatal flaw – Plaintiffs fail to point to any information contradicting the Exchange Act Defendants' public statements, let alone any known to them at the time of the alleged misstatements. Despite Plaintiffs' urging to view each scienter theory "holistically" (Opp'n at 20), "several insufficient allegations of recklessness can never add up to a compelling inference of scienter." *Thomas v. Shiloh Indus., Inc.,* 2017 WL 1102664, at *6 (S.D.N.Y. Mar. 23, 2017).

### A.    Plaintiffs Fail to Allege Contradictory Information Known To or Accessed By the Exchange Act Defendants

Plaintiffs assert that the Exchange Act Defendants "necessarily" knew or had access to facts pertaining to Argo's capitalization or ability to enter into a fixed-priced PPA by virtue of their executive positions, and therefore had information contrary to their public statements. (Opp'n at 20-21.) However, none of these statements reference any specific piece of adverse knowledge or information possessed by the Exchange Act Defendants. The Court cannot infer that the Exchange Act Defendants had contrary information, rather Plaintiffs must "specifically identify

6

the reports or statements containing this information." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 406 (S.D.N.Y. 2016). Indeed, none of the cases cited by Plaintiffs support the proposition that allegations of "knowledge of or access to information" are sufficient to support a strong inference of scienter without any specific indication of contrary information or misconduct. (Opp'n at 21.) For example, in *In re Scholastic Corp. Sec. Litig.*, the Second Circuit found a strong inference of scienter where defendants received copies of reports that contradicted their public statements, and "made no corrections." 252 F.3d 63, 70 (2d Cir. 2001); *see also Rudani v. Ideanomics, Inc.*, 2020 WL 5770356, at *7 (S.D.N.Y. Sept. 25, 2020) (defendants "had access to records showing the entities' limited revenues and unprofitability."); *Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 551 (S.D.N.Y. 2017) (Form 8-K disclosed that restatement "was attributable to misconduct"). There is no similar non-speculative allegation here.

Plaintiffs also rely on speculation by two CWs that the Exchange Act Defendants "necessarily had knowledge of or access to information" concerning energy costs and Argo's capitalization. (Opp'n 21-22.) But these CWs are low-level employees, and Plaintiffs allege no basis for the CWs' purported knowledge of Argo's "undercapitalization" or "understanding" of whether Argo executives Wall and Appleton reviewed software that contained (unspecified) contradictory information concerning energy costs. (MTD at 17-18, 20-21.) By contrast, the CWs in *In re Avon Sec. Litig.*, cited by Plaintiffs, are all senior level professionals, and were alleged to have directly witnessed events contrary to the defendants' public statements. 2019 WL 6115349, at *2 (S.D.N.Y. Nov. 18, 2019) (McMahon, J.).

Lastly, Plaintiffs resort to contorting post-class period statements from Galaxy, the purchaser of the Helios facility. (*See* Opp'n at 22.) A plain reading shows that a logical leap is

7

required to infer that Galaxy's statement about its own ability to enter into a fixed-price PPA, means that Argo was unable to do so more than a year earlier for the same reason.

### B.    Plaintiffs Cannot Rest Scienter on "Core Operations" Doctrine

Plaintiffs ask the Court to infer that because "Helios" and "access to low-cost power" are important features of Argo's "core operations," then "the Individual Defendants should have been aware of" alleged misstatements and omissions regarding Argo's supposed undercapitalization. (Opp'n at 24.) However, "core operations" doctrine merely imputes to individuals knowledge of facts about important company functions that are contrary to public statements. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 274 (S.D.N.Y. 2008). Plaintiffs, however, have not identified any such undisclosed facts, so there is nothing to impute to the individual Exchange Act Defendants. Plaintiffs therefore cannot rely on knowledge of "core operations" to salvage their scienter allegations. *See, e.g.*, *In re Federated Dep't Stores, Inc., Sec. Litig.*, 2004 WL 444559, at *6 (S.D.N.Y. Mar. 11, 2004) (no scienter where plaintiffs "seek to impute knowledge to the individual Defendants without any specific allegations that Defendants themselves actually received the information that Plaintiffs argue establishes scienter.").

This case is therefore unlike the cases cited by Plaintiffs, which rely on factual allegations that the defendants there were aware of apparent contradictory information. For example, in *In re Avon Sec. Litig.*, the Court held that the "allegations offered by the CWs suggest that Defendants knew facts or had access to information suggesting that their public statements were not accurate." 2019 WL 6115349, at *19. There, the Court found that defendants acted with scienter when they "touted the new training program" in Brazil, but the CWs—managers and executives on location in Brazil—stated they "witnessed no such training." *Id.* at 18, 20. For similar reasons, this case is also unlike *In re Hi-Crush*, where the Court held that plaintiff plead scienter by alleging that "someone at [the company]" received a letter containing contradictory information, before the

8

company published contrary information. 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013) (McMahon, J.). No such facts are present here.

Additionally, the core operations doctrine cannot be relied upon where, as here, Plaintiffs do not otherwise plead an independent basis for scienter. Thus, the cases cited by Plaintiffs are distinguishable because, in those cases, the court found that the plaintiff adequately pled scienter on a separate basis. *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) ("Because … plaintiffs have adequately pleaded scienter on the basis of the confidential witnesses' statements, we need not address defendants' arguments…regarding [defendants'] core operations"); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) ("In addition to [defendants'] executive positions…Plaintiffs allege that the [analyst report] adds to a strong inference of scienter"); *In re Alstom SA*, 406 F. Supp. 2d 433, 460 (S.D.N.Y. 2005) (found recklessness due to *inter alia* the "significant length of time" that the relevant "[financial] arrangements were not disclosed.").

### C.       Plaintiffs' Allegations of "Circumstantial Evidence" Fail to Support Scienter

Plaintiffs rehash two allegations of "circumstantial evidence" that they claim are probative of scienter: (i) Defendants Appleton's and Wall's resignations four months after the end of the purported Class Period and (ii) their signing of the SOX certifications. (Opp'n at 24-25.) Neither salvage Plaintiffs' scienter allegations.

Resignations alone do not indicate fraud (MTD at 22), and allegations of executive departures can only bolster an inference of scienter when they are "highly unusual and suspicious." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011). Plaintiffs' ostensible assertion that the executives' departures being close in time to "relevant events" can create such "highly and unusual circumstances" is incorrect. (*See* Opp'n at 24.) Without allegations to "connect[] those resignations to the fraud", resignations are not probative of scienter, even when proximate to key

9

events. *Glaser*, 772 F. Supp. 2d at 598; *see, e.g., Thomas v. Shiloh Indus., Inc.,* 2018 WL 4500867, at *6 (S.D.N.Y. Sept. 19, 2018) (no scienter despite allegation that "day after [whistleblower] blew the whistle" executive announced resignation). The cases cited by Plaintiffs are not to the contrary, as, in those cases, plaintiffs allege additional indicia of fraud, or otherwise tie the resignations to the alleged fraud. *See In re Salix Pharms., Ltd.,* 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016) (board exercised clawback provision against defendants where resignation agreement allowed clawback upon "Board determination that the Individual Defendants 'intentionally engaged in wrongdoing.'"); *In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 534 (S.D.N.Y. 2009) (indication of an "intentional flaw" committed by senior officer).

Likewise, Plaintiffs' assertion that Wall and Appleton signing the SOX certification is probative of scienter, (Opp'n at 24), is also insufficient. (*See* MTD at 22-23.) Thus, *In re Eletrobas* is distinguishable, as the Court found signing the SOX certification probative of scienter where the plaintiff *also* pled "red flags" which "highlighted significant problems with [company's] internal controls." *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 468 (S.D.N.Y. 2017). No similar "red flags" are alleged here and, thus, Plaintiffs' allegations of scienter fail.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening memorandum, this Court should dismiss the Amended Complaint.

Dated:      New York, New York           **MCDERMOTT WILL & EMERY LLP**
              February 7, 2023

                                            By:   */s/ Joel C. Haims*
                                            Joel C. Haims
                                            Michael R. Huttenlocher
                                            Kierstin S. Fowler
                                            Christopher J. Whalen
                                            One Vanderbilt Avenue
                                            New York, New York 10017
                                            (212) 547-5400
                                            jhaims@mwe.com
                                            mhuttenlocher@mwe.com
                                            ksfowler@mwe.com
                                            chwhalen@mwe.com

                                            *Attorneys for Defendants*

11